[Civ. No. 47770. Second Dist., Div. Two. Dec. 16, 1976.]

ROBERT L. MARSH, JR., Plaintiff and Appellant, v.
EDWARDS THEATRES CIRCUIT, INC.,
Defendant and Appellant.

882

**884**

## COUNSEL

Nichols & Rose, Mason H. Rose V, Patricia L. Riley and Leonard Siegel for Plaintiff and Appellant.

Fred Okrand, Jill Jakes, Mary Ellen Gale and Gary D. Sowards as Amici Curiae on behalf of Plaintiff and Appellant.

Davidson & Davidson and Harold W. Davidson for Defendant and Appellant.

## OPINION

**COMPTON, J.**—Plaintiff is a quadriplegic confined to a wheelchair. He commenced this action against the defendant, an owner and operator of a chain of motion picture theatres, alleging that the latter unlawfully discriminated against him because of his physical handicap by denying him admission to its Newport Cinema Theatre.

The complaint alleged that defendant's conduct violated various provisions of the United States Constitution as well as federal and state statutes. The prayer was for compensatory, statutory and punitive damages and an injunction against future violations.

The case was tried, and properly so, on the basis of California statutory law. Defendant's business is a private venture. No public funds are involved nor is there any governmental action or participation in the maintenance or operation of defendant's theatres. Furthermore, in this case, defendant did not seek to invoke state action in the form of judicial process against the plaintiff. The court was not asked to enforce a discriminatory state law nor to lend judicial assistance to discrimination by a private person. (Cf. *Shelley* v. *Kraemer,* 334 U.S. 1 [92 L.Ed. 1161,

68 S.Ct. 836, 3 A.L.R.2d 441]; *Marsh* v. *Alabama,* 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276]; *Food Employees* v. *Logan Plaza,* 391 U.S. 308 [20 L.Ed. 603, 88 S.Ct. 1601]; *Lloyd Corp.* v. *Tanner,* 407 U.S. 551 [33 L.Ed.2d 131, 92 S.Ct. 2219]; see also *Diamond* v. *Bland,* 11 Cal.3d 331 [113 Cal.Rptr. 468, 521 P.2d 460]; *Newby* v. *Alto Riviera Apartments,* 60 Cal.App.3d 288 [131 Cal.Rptr. 547].)

Federal anti-discrimination statutes are no broader in application to the circumstances here involved than are the California statutes. Federal law in a manner similar to California law, generally prohibits discrimination on the basis of race, color, religion or national origin in public accommodations. (See 42 U.S.C.A. § 2000a et seq.; 42 U.S.C.A. § 1983.)

Hence plaintiff, if he is to prevail, must establish that defendant's conduct violated those statutes by which California, under its police power, has barred certain forms of discrimination by privately operated business accommodations. Our resolution of this case is based on an interpretation of those statutes.

In the court below the jury returned a verdict in favor of the plaintiff declaring that defendant had discriminated against him but awarding plaintiff no damages of any kind. The trial judge denied plaintiff's request for an injunction but did award the plaintiff $250 statutory damages pursuant to Civil Code section 52.[1]

Plaintiff appeals from that portion of the judgment which makes no award for compensatory or punitive damages and denies injunctive relief. Defendant cross-appeals from the judgment with respect to the finding of discrimination, the award of $250 statutory damages and the award of costs to plaintiff.

---

[1]Civil Code section 52 provides as follows: "Whoever denies, or who aids, or incites such denial, or whoever makes any discrimination, distinction or restriction on account of sex, color, race, religion, ancestry, or national origin contrary to the provisions of Section 51 of this code, is liable for each and every such offense for the actual damages, and two hundred fifty dollars ($250) in addition thereto, suffered by any person denied the rights provided in Section 51 of this code."

Civil Code section 51 itself provides: "This section shall be known, and may be cited, as the Unruh Civil Rights Act. [¶] All persons within the jurisdiction of this State are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. [¶] This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, or national origin."

There is no significant dispute as to the facts. On April 21, 1972, the plaintiff accompanied by his father and mother arrived at the Newport Cinema Theatre in the City of Newport Beach. The theatre had been built in 1968 in conformance with then applicable building laws. It contained no special facilities for persons in wheelchairs.

The theatre manager, who was acting as box office cashier, informed plaintiff's father that plaintiff would have to leave his wheelchair and occupy a regular seat since the fire regulations prohibited anyone from sitting in the aisles. As an alternative, the manager offered plaintiff a space in front of the regular seats a short distance from the screen.

Plaintiff was unwilling to risk injury by being lifted from his wheelchair into a theatre seat and did not wish to be placed near the screen. He left the theatre with feelings of frustration and humiliation. Beyond being upset, he suffered no monetary loss or physical harm as a result of the incident.

Plaintiff advances a number of claims of error in procedural and evidentiary rulings. The significance of these contentions, however, is totally dependent on the determination of the correctness of his basic premise which is that defendant in constructing and maintaining a building without the modifications necessary to accommodate persons suffering from physical handicaps, violated those laws which prohibit discrimination by operators of public accommodations such as theatres.

The question then is—does California law which prohibits discrimination against the physically handicapped in access to public accommodations require the operator of such accommodations, absent specific legislation mandating it, to make structural modifications in order to facilitate access. Under the present state of the law the answer is "No."

In 1968, the Legislature had enacted Civil Code sections 54.1 and 54.3.

"(a) Blind persons, visually handicapped persons, and other physically disabled persons shall be entitled to *full and equal access, as other members of the general public,* to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats or any other public conveyances or modes of transportation, hotels, lodging places, places of public accom-

modation, amusement or resort, and other places to which the general public is invited, *subject only to the conditions and limitations established by law,* or state or federal regulation, and applicable alike to all persons." (Italics added.)

Civil Code section 54.3 provided: "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of a totally or partially blind person or other disabled person under Sections 54, 54.1 and 54.2 shall be guilty of a misdemeanor."

Under these provisions discrimination against handicapped persons was declared to be a crime. The effect of such declaration was to invoke the threat of criminal prosecution as a deterrent to such discrimination while at the same time vesting the public prosecutor with the responsibility for determining whether or not in each case access was equally available to all members of the public and whether a particular denial of access was based on legally established conditions and limitations.

■ These statutes created no private cause of action. This conclusion is compelled by the fact that in 1974 the Legislature did enact Civil Code section 55 which provides a private remedy as follows:

"Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code, Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code, or Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees."

Concern about the effect of the design and construction of buildings and sidewalks on the ability of handicapped persons to have access to and use *public buildings* led in 1968 to the enactment of Government Code section 4450. That section provided for the establishment of standards for buildings constructed with *public funds.* These standards which were to adhere to the American Standards Association specifications were designed to insure such accessibility.

Effective July 1, 1970, public accommodations and facilities thereafter constructed with *private funds* were with certain limited exceptions required to conform to the above referenced standards. (Health & Saf. Code, §§ 19955, 19956.)

Health and Safety Code section 19959 enacted in 1971 provided a limitation to the standards set out in Government Code section 4450 and Health and Safety Code section 19955, as follows: "Every existing public accommodation constructed prior to July 1, 1970, which is not exempted by Section 19956, shall be subject to the requirements of this chapter when any alterations, structural repairs or additions are made to such public accommodation. This requirement shall only apply to the area of specific alteration, structural repair or addition and shall not be construed to mean that the entire building or facility is subject to this chapter."

Present public accommodation laws prohibit gross and invidious discrimination. They do not impose affirmative duties of the type which plaintiff seeks to impose. Government Code section 4450 and Health and Safety Code sections 19955, 19956, 19959 make clear the legislative *intent.* ■ That *intent is that affirmative conduct is required only* when directed by those sections dealing with construction of new facilities or with the repair and alteration of existing facilities.

This court is not insensitive to the hardships suffered by persons who are afflicted with the wide range of physical disabilities that exist in our society. Many of these disabilities are suffered by persons who served their country in one or more of the three recent debilitating wars in which this country has been involved. Our society's traditional concern for the less fortunate among us requires that we take all appropriate measures to lessen the burden of handicapped persons.

The varied and distinctive nature of the numerous handicaps from which so many people suffer suggests, however, that the problem is one which the legislative branch of government is uniquely equipped to solve. It is in the legislative halls where the numerous factors involved can be weighed and where the needs can be properly balanced against the economic burdens which of necessity will have to be borne by the private sector of the economy in providing a proper and equitable solution to the problem.

Plaintiff argues that the Legislature has already spoken with sufficient force to permit judicial remedy by way of damages and injunction for his particular situation. He reasons that the Unruh Civil Rights Act, Civil Code section 51 (fn. 1, *ante*) is designed to address all forms of invidious discrimination even when that discrimination takes a form other than those specifically enumerated, i.e., race, sex, color, religion or national origin, citing *In re Cox,* 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992]. According to plaintiff it then follows that Civil Code section 52 provides for actual as well as statutory damages in the event of a violation of section 51, and Code of Civil Procedure section 526 permits issuance of an injunction to prevent a multiplicity of judicial proceedings or in situations where pecuniary compensation is inadequate.

Thus he contends that the court below correctly awarded him statutory damages and that he should be entitled to have the entire matter of actual damages resubmitted to the jury because of their failure to award even those statutory damages. He further contends that the trial court erred in refusing to grant an injunction directing the defendant to take the necessary steps to accommodate him in the future. This is all based on the fact that the jury found that the defendant had discriminated against the plaintiff.

There are several answers to this argument. First it is premised on the contention that the jury was correct in its finding that defendant's conduct amounted to actionable discrimination. ▪ We are of the opinion, however, that that determination by the jury has no support in the evidence or law.

*In re Cox, supra,* held that the Unruh Civil Rights Act, Civil Code section 51, was broad enough to prohibit all forms of arbitrary discrimination by a business enterprise. The court also stated at page 212 that: ". . . this broad interdiction of the act is not absolute; the [business enterprise] may establish reasonable regulations that are rationally *related to the . . . facilities provided.*" (Italics added.) The Unruh Civil Rights Act itself contains a limiting clause which excepts from its application situations where access is conditioned or limited by a law applicable to all persons alike.

Because of the limitation enunciated by the court in *Cox* and the limitation in the language of the statute, Civil Code section 51 is of little aid to the plaintiff here. Beyond that we conclude that section 51 and the

remedies provided in Civil Code section 52 have no application to discrimination against the physically handicapped.

It must be remembered that *In re Cox* did not involve an action brought under Civil Code section 51. That case involved a petition for habeas corpus filed by a person who had been charged with a criminal offense for refusing to leave business premises when ordered to do so. The particular city ordinance which he was alleged to have violated specifically excepted instances where its application would violate Civil Code section 51. The *Cox* ruling was pretrial and simply stated the general proposition that petitioner could successfully defend the criminal action by establishing that his expulsion from the business premises was the result of any form of arbitrary discrimination.

The legislative intent is clearly contrary to plaintiff's position. Civil Code section 54.1 was enacted after Civil Code section 51 and deals specifically with discrimination against the physically handicapped. ■ A special statute dealing expressly with a particular subject controls and takes precedence over a more general statute covering the same subject. (*Simpson* v. *Cranston,* 56 Cal.2d 63 [13 Cal.Rptr. 668, 362 P.2d 492].) Both sections 51 and 54.1 deal with forms of discrimination in public accommodations. As to the physically handicapped, section 54.1 is specific.

Plaintiff's case then is governed solely by Civil Code section 54.1. That latter section, in a manner similar to the Unruh Civil Rights Act, excepts from its interdiction, limitations or conditions of access based on laws or regulations applicable to all persons, and we again emphasize that *Cox, supra,* recognized the right of a proprietor of public accommodations to impose reasonable restrictions.

One of the limitations to which all persons are subject is the requirement that they be able to avail themselves of public accommodations without violating fire regulations. It is a well known fact that fire insurance carriers often rely on violations of fire regulations to avoid payment of benefits. ■ This, of course, is a factor which a proprietor can reasonably consider in regulating access to his premises.

Section 65.03 of title 19, California Administrative Code prohibits obstruction of the minimum clear width of all exits, aisles, ramps,

corridors and passageways by ticket offices, turnstiles, chairs, other equipment or persons.

Further, Newport Beach Municipal Code section 9.08.010 adopts by reference provisions of the fire prevention code promulgated by the National Board of Fire Underwriters. The relevant subdivision entitled "Obstruction to Means of Egress" reads as follows:

"c. No aisle, passageway or stairway in any mercantile occupancy shall be obstructed with tables, showcases or other obstructions during hours such occupancy is open to the public."

The foregoing fire regulations apply to all persons equally and the definition of prohibited obstructions would include persons seated in wheelchairs. It necessarily follows that the plaintiff in this case as well as all other persons entering the theatre were subject to the fire regulations. Treating plaintiff in the same manner as any other person who entered the theatre does not amount to actionable discrimination.

■ Finally, the enactment of Civil Code sections 54.3 and 55 providing for public prosecution and private injunctive relief for violations of Civil Code section 54.1 evidences a legislative intent that those remedies are to be exclusive and that the damages provided for in section 52 are not recoverable for a violation of Civil Code section 54.1.

■ Where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted. (*City of Burbank* v. *Metropolitan Water District,* 180 Cal.App.2d 451 [4 Cal.Rptr. 757].)

We need not decide whether section 55 should have prospective or retroactive application since plaintiff has failed to establish a violation of section 54.1, a necessary prerequisite to injunctive relief. Section 54.1 does not require affirmative action by way of modifying existing structures. This conclusion is borne out by the fact that section 55 also specifically includes references to violations of the provisions of those Government Code and Health and Safety Code sections which established building standards and requirements in this area. If the Legislature had intended injunctive enforcement of section 54.1 to apply to

structural modifications then the inclusion in section 55 of reference to Health and Safety Code sections 19955 and 19959 would be redundant.

We conclude that the operator of a business of a type enumerated in Civil Code section 54.1 is not required by the force of that section *alone* to modify its facilities to allow for their use by handicapped persons. That statute requires only that the operator open its doors on an equal basis to all that can avail themselves of the facilities without violation of other valid laws and regulations.

The judgment is reversed and the trial court is directed to enter a judgment for the defendant along with an award of costs. Defendant is to recover costs on this appeal.

Fleming, Acting P. J., and Beach, J., concurred.

A petition for a rehearing was denied January 7, 1977, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied March 16, 1977.