[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 869 
OPINION
These are appeals from orders of the juvenile court that removed custody of a boy and girl from their mother because of the mother's emotional instability. No physical or mental abuse has been directed toward the children, but the mother apparently suffers from extreme emotional disability.
On February 9, 1977, Mrs. Lampe, a counselor at Thompson Junior High School, had a visit from Carrie W., one of appellant's children. The child was hysterical and was afraid of the way her mother was acting. On the evening of February 16, 1977, appellant, a pathologist, left for Michigan to look for a job. Appellant had instructed the children not to leave the apartment without someone there. Richard, then 11, was to stay at home from school on the 17th, and Carrie, then 12, was to stay in the apartment on the 18th. Through Mrs. Lampe, appellant's psychiatrist was made aware of the children's difficulties and he contacted the Protective Services Division of the Kern County Social Welfare Department. On February 17, 1977, at 3:50 p.m., the children were taken into custody of the juvenile court and admitted to the Kern County Shelter Home.
While at the shelter home, the children told a social worker that they did not want to live with their mother at the present time and that they were afraid of the way she was acting. Carrie told the social worker that her mother "likes to yell, thinks the apartment is being bugged, and blames Dr. Frankhowser," a former employer in Indiana who had fired her. When asked why their mother wanted them to guard the apartment in her absence, Carrie stated that they were guarding "the notes her mother kept regarding Dr. Frankhowser's activities."
The social worker's report contains descriptions of the mother's behavior and its effect upon the children. These descriptions are based on notes maintained by appellant and the writer's observations of and conversations with the children and their mother. The report was read and considered by the trial court.
At the hearing held on March 14, 1977, appellant testified that she had left Carrie and Richard alone at the apartment overnight when she went "interviewing for possible residency positions." The children were given a list of people to call in case of an emergency and drilled on what to do in case of fire. Appellant trusted only members of her family (the *Page 871 
children or herself) to guard the apartment from "constant pilfering and stealing" and "all kinds of destruction."
Appellant stated that the harassment she suffered was caused by organized crime led by her former employer, Dr. Frankhowser. Dr. Frankhowser and persons manipulated by him were responsible for bugging her telephone, her electrical appliances, and her car; for pilfering and stealing from her apartment; for siphoning gas from her car and tampering with the oil; for ostracizing her and her children from the companionship of others; and for harassing both her and her children in grocery stores, beauty shops, and on the freeway. Dr. Frankhowser's "bribery" was responsible for her commitment to Camarillo State Hospital, for her continuing inability to obtain employment, and for her children saying they were afraid of her.
Appellant also testified that she had an income of $1,800 a month and lived with the children in a two-bedroom condominium. She provided her children with adequate clothing, food and maintenance. Although her children attend school regularly, she did on occasion ask them for business and family reasons to stay home. She stated that she had left them alone overnight on two occasions during the past year.
The juvenile court found under Welfare and Institutions Code section 726, subdivision (a)[1] that the mother was incapable of providing maintenance, training and education for the minors. The minors were subsequently placed in a foster home.
Appellant contends on appeal that there was insufficient evidence presented to the juvenile court to support a finding of dependency pursuant to section 300, subdivision (a), and that the court failed to find that it would be detrimental to return the children to the appellant mother.
(1) Section 300 permits the juvenile court to assert jurisdiction over children and declare them dependents of the court. The section states in pertinent part:
"Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court: *Page 872 
"(a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control."
If there is any substantial evidence to support the findings of a juvenile court, a reviewing court is without power to weigh or evaluate the findings. We must make all reasonable inferences to support those findings and we must view the record in the light most favorable to the juvenile court order (In re Robert P.
(1976) 61 Cal.App.3d 310, 315 [132 Cal.Rptr. 5]).
(2a) Clearly, when the evidence is viewed in the light most favorable to respondent, and when respondent is given the benefit of every legitimate inference, the evidence shows that there was a demonstrated incapacity on the part of appellant to care for her children and that this incapacity was harming the children and that the welfare of the children required that custody be taken from the appellant.
(3) We agree with the appellant that leaving the children alone for one night does not evidence lack of parental control. If that evidence was all that supported the rulings in these cases, we would have no hesitation in reversing the orders.
(2b) While the evidence showed that the financial and physical needs of the children were well met and that the children were not physically abused, the evidence also clearly established that appellant was suffering from an extreme emotional disability. Appellant's mental disorder permeates her entire life and surroundings. Her testimony reads like a fantasy. She appears out of touch with reality to the point that she is unable to meet elementary emotional needs of her young children. The report of the social worker in this case indicated that appellant's instability was harming the children because they were having difficulties living with appellant's eccentric behavior. The children were simply unable to cope with appellant's bizarre behavior and appellant's irrational priorities. The jurisdictional and dispositional rulings were based upon the appellant's inability to provide the children with a normal emotional environment. Her fear of persecution and harassment and her conduct stemming from that fear prevented the children from living in a healthy environment. The entire atmosphere was charged with appellant's sojourn in a fantasy land. The record clearly supports the findings. *Page 873 
(4) Civil Code section 4600 states in part: "Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child, and the award to a nonparent is required to serve the best interests of the child. . . ."
The California Supreme Court stated in In re B.G. (1974)11 Cal.3d 679, 698-699 [114 Cal.Rptr. 444, 523 P.2d 244]: "We conclude that section 4600 permits the juvenile court to award custody to a nonparent against the claim of a parent only upon a clear showing that such award is essential to avert harm to the child. A finding that such an award will promote the `best interest' or the `welfare' of the child will not suffice."
(5a) In this case, while there is no express finding of detriment, unlike In re B.G. where there was no finding of detriment, the finding here can be implied from the words of the juvenile court: ". . . I . . . find that the parent or guardian is incapable of providing, or has failed and neglected to provide, proper maintenance, training, education, for the minor, and the welfare of the minor requires that custody be taken from the parent or guardian." That is an express finding required by section 726
(6) In In re Susan M. (1975) 53 Cal.App.3d 300, 315 [125 Cal.Rptr. 707], we said:
". . . [I]t seems very clear that it can be presumed that the trial court made the requisite finding under section 4600 if the record shows that in awarding custody of a minor to a nonparent the court used the proper standard. Thus, in Chaffin v. Frye
(1975) 45 Cal.App.3d 39, 44-45 [119 Cal.Rptr. 22], the lower court awarded custody of two minor children to the mother's parents without making an express finding of detriment pursuant to section 4600 The appellate court upheld the judgment because the pleadings and the evidence presented at the hearing disclosed that the only question presented to the trial court was whether an award of custody to the mother would be detrimental to the children and an award of custody to the grandparents was required to serve the best interests of the children.
"We believe that the same can be said of a proceeding brought under subdivision (a) or subdivision (b) of section 232 of the Civil Code where, as here, the proceeding is predicated entirely upon `specific instances of *Page 874 
detriment.' (See In re B.G., supra, 11 Cal.3d 679, 696, fn. 25.) Certainly, evidence which supports an implied finding that the parents abandoned or neglected their minor child to the extent that the child should be declared free of their custody and control, and that the conditions which gave rise to the neglect in the first instance still persisted at the time of hearing, necessarily embodies a finding that an award of custody to the parents would be detrimental to the child and that an award of custody to a nonparent would serve the best interests of the child. However, the better practice would be to make the statutory finding even though it was not requested."
We believe the same can also be said of a proceeding under section 300, subdivision (a), wherein a finding was made under section 726 — a statute which presents a specific instance of detriment justifying an award of custody to a nonparent.
(5b) The court expressed an opinion in the record that if there was much further disintegration it might be dangerous for the children. There was ample evidence to support a finding of detriment. We hold that such a finding of detriment was implicitly made in this case.
The orders of the juvenile court do not permanently sever the parent-child relationship. As required by section 366, the court provided for another hearing in the matter. That hearing is presently set for March 28, 1978, in the juvenile court.
The judgments are affirmed.
Brown (G.A.), P.J., and Franson, J., concurred.
[1] Unless otherwise stated, all code references are to the Welfare and Institutions Code. *Page 875