[No. D010180. Fourth Dist., Div. One. Oct. 11, 1989.]

JONES T., SR., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Real Party in Interest.

[No. D009107. Fourth Dist., Div. One. Oct. 11, 1989.]

In re JONES T., JR., et al., Minors.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
JONES T., SR., et al., Objectors and Appellants.

**COUNSEL**

Jones T., Sr., in pro. per., Anne T., in pro. per., Robert D. Frank, under appointment by the Court of Appeal, Scott A. Wahrenbrock, Gary S. Plavnick, Julie E. O'Connor, Charles D. Atkins, Kandy Koliwer, Robert F. Gusky and Joseph L. Rubin for Petitioners and for Objectors and Appellants.

Roland Simoncini and Barbara A. Smith, under appointments by the Court of Appeal, for Minors.

Edwin L. Miller, Jr., District Attorney, Ronald M. Jarvis, Carlos Armour, Mary Avery, John C. Harris, Lorraine Rooney, Cynthia L. Windsor and Patricia L. Mallen, Deputy District Attorneys, Lloyd M. Harmon, Jr., County Counsel, Ann Hewton and Gary C. Seiser, Deputy County Counsel, for Respondent and, for Real Party in Interest and for Petitioner and Respondent.

## OPINION

**NARES, J.**—In this writ proceeding, petitioners Jones T., Sr., and Anne T. challenge an order of the juvenile court after a permanency planning hearing. The order, in part, directed county counsel to initiate proceedings to terminate their parental rights under Civil Code section 232. Jones and Anne want the case remanded for a reevaluation of the permanency plan, specifically to (1) have the court consider guardianship and other alternatives less drastic than severance of the parent-child relationship, and (2) give them the opportunity for sufficient visitation in an environment conducive to reunification. They assert unless this court issues appropriate writs, the superior court will permanently sever their parental rights in a proceeding so fundamentally unfair as to deny them due process of law. Jones and Anne also attempt to appeal the court's order by filing a brief pursuant to *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071].

We conclude the court was not required to consider guardianship once it found the minors were adoptable. We further conclude Jones and Anne received adequate reunification services, including opportunities for visitation with the minors. Finally, because the court's order is nonappealable, we dismiss the appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

Jones and Anne are the parents of four-year-old Jones, Jr., and three-year-old Maryann. Jones and Anne are both chronic paranoid schizophrenics and have been under psychiatric care for more than 10 years. Jones has a history of violent behavior, street drug and alcohol abuse and inconsistency in taking his prescribed medications. Anne is also inconsistent in taking her medications and is extremely emotionally dependent on Jones. Both Jones and Anne have been hospitalized as late as July 1987 for acute episodes of psychosis. They have had difficulty maintaining stable housing, having been evicted five times in one year due to screaming and fighting. Although both parents love their children, they have limited parenting skills and low levels of frustration, even while taking medication. As early as 1985, voluntary services were provided to them, including dependent diversion, new alternatives home-base services, public health nurse, psychiatric intervention and the assistance of relatives.

On May 29, 1987, the La Mesa police were called to take Jones, Jr., and Maryann into custody. Jones and Anne had left the minors with their paternal grandparents stating they were unable to care for them.

On June 3, 1987, petitions were filed in the juvenile court to have the minors declared dependents under Welfare and Institutions Code,[1] section 300, subdivision (a) based in part on the mental disabilities of Jones and Anne resulting in their inability to adequately care for and supervise the minors.[2] Following a detention hearing, the minors were detained in a confidential foster home. The court appointed counsel to represent them.

Although Jones and Anne were notified of the June 22, 1987, dispositional hearing, they did not appear on that date. Nevertheless, the court granted the petition under section 300, subdivision (a), ordered that physical custody be taken from the parents under section 361, subdivision (b) and Civil Code section 4600,[3] placed the minors in a confidential licensed foster home, and signed a reunification plan prepared by the DSS. Jones and Anne later signed the reunification plan which required, among other things, that they attend a series of parenting classes with proof of completion,[4] and continue psychiatric treatment including prescribed medications.

At a review hearing on November 10, 1987, the court adopted the recommendations of DSS, including placing the minors in the home of their paternal aunt and uncle. At that hearing, Anne was present but Jones was absent due to his placement in Patton State Hospital from September 1987 to January 1988 following charges he assaulted and battered a police officer and resisted arrest.[5] However, Jones was represented at the hearing by a court-appointed attorney. The court set another review hearing for May 5, 1988.

While Jones was in Patton, DSS arranged weekly visits between the minors and Anne at the parents' home, supervised by the aunt and uncle with whom the children lived. After Jones's release, two visits occurred at the parents' home. As of January 26, 1988, DSS arranged for supervised visits at its facility and provided Jones and Anne with bus tokens. However, Jones and Anne cancelled scheduled visits for January 26 and February 8,

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Anne gave birth to another baby girl on February 29, 1988. Referral to the Department of Social Services (DSS) was later made because the parents were unable to care for her.

[3] Although the trial court ordered physical custody to be taken from the parents under Civil Code section 4600, that statute no longer applies to dependency proceedings, but instead assures "minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage." In enacting Senate Bill No. 14 (Stats. 1982, ch. 978), the Legislature has provided a specific statutory scheme for the care, custody, control and placement of dependent children.

[4] Neither Jones nor Anne completed the required parenting classes. Jones attended one and Anne attended six of the twelve classes.

[5] Jones was later found competent to stand trial, was convicted and placed on probation.

stating they could not take the bus due to Anne's pregnancy and Jones's tendency to get lost when he travelled by bus.

In a new visitation order, DSS scheduled visitation between the parents and the minors for every other Tuesday and provided transportation for the parents. Under this arrangement, one visit occurred on February 16. The March 1 visit was cancelled due to the birth of the parents' third child. On March 15 and 29, Anne visited with the minors but cancelled the visit scheduled for April 12. On April 19, a visit occurred at the parents' home, but was terminated early when they became agitated, exhibited inappropriate behavior, and Jones threatened the social worker. Jones and Anne cancelled all visits between April 19 and July 21. According to the social worker's report, visitation was accomplished only when no effort was required by the parents, that is, when the minors were brought to them or when DSS transported the parents to the minors. The parents refused to take the bus even though they were provided with tokens because it was "inconvenient."[6]

Prior to the May 5 hearing, DSS filed an application for an order re permanency planning. The application included an adoption assessment dated April 22, 1988, indicating the minors were adoptable. A supplemental report was also filed containing a letter written by Dr. Wayne A. Funk, the parents' treating psychiatrist since March 1984. In his letter, Dr. Funk stated both Jones and Anne had improved since he first began treating them in 1984, partly because they were being maintained on appropriate psychotropic medications. Dr. Funk further stated Jones's capacity to parent has been greatly influenced by his mental states which have been seriously affected by his alcohol and stimulant abuse. Anne has made significant gains directly influencing her maternal capacity. According to Dr. Funk, a permanent dissolution of the family unit would have a devastating impact on Anne. He also stated Jones and Anne have shown a loving and caring attitude toward their children and a genuine concern for their well-being. He never personally observed abusive behavior. Dr. Funk recommended placing Maryann back in the home to test Anne's increased stress tolerance and if satisfactory, Jones, Jr., could be gradually reintegrated into the home.

On July 21, the court set the permanency planning hearing for trial on August 23, 1988. DSS filed an additional supplemental report which includ-

---

[6] Further visitation was had at the DSS facility on August 3, August 10, August 17, August 31, and September 9, 1988, plus two additional visits after that. According to the social worker who supervised these visits, the minors did not spontaneously interact with their parents and appeared to be uncomfortable with them. Additionally, the aunt with whom the minors live reported they have shown regressive and emotionally disturbing behavior immediately following the visits with their parents.

ed a more elaborate report by Dr. Funk and a further adoptability assessment. The adoptability assessment recommended the minors be adopted because based on the length and severity of the parents' disabilities, it is unlikely they will be able to successfully parent the minors in the future. The minors are thriving in their present placement with their paternal aunt and uncle who are anxious to adopt them.

According to the supplemental report prepared by DSS, Jones and Anne are unable to provide the minors with normal, necessary and adequate parental care. They failed to complete their reunification requirements, "have a long-standing history of psychiatric involvement and hospitalizations, are inconsistent in taking their prescribed medications, exhibit multiple patterns of distorted thinking and coping styles, relationship violence, and drug abuse."

Trial was held on August 23 and November 3, 1988. The two social workers assigned to the case testified as to the contents of their written reports including their observations of the interactions between the parents and minors and their recommendations for a permanency plan. The court also considered several supplemental reports filed by DSS between August 23 and November 3, which included psychological evaluations of Jones and Anne performed by Dr. Carol Russ of San Diego County Mental Health Services. According to Dr. Russ's report, an additional six months of counseling, parenting classes and visitation would not significantly benefit Jones's and Anne's ability to parent due to their chronic psychosis and denial in addition to Jones's chemical dependency and organic brain dysfunction.

After argument by counsel, the court ruled as follows: "This court is convinced that there are individuals in society that are diagnosed with a mental illness the same or similar to these parents that are adequate parents, and that can be adequate parents. The mere fact of the parents['] mental illness does not categorically disqualify them as being adequate parents, and that's the court's position. And the court does not regard these individuals as throwaways in this society.

"However, during the last year, these parents have demonstrated a number of deficits, and prior to that, as well. And, unfortunately, these deficits clearly interfere with their ability to parent. Their mental illness certainly is a factor in contributing to these deficits, and contributes to rendering these individuals unable to properly provide adequate care for the minors.

"The court feels that, despite the severity of these parents' problems, the Department of Social Services did provide reasonable services. To the extent of any additional services that might have been offered to these parents

that is uniquely tailored to address their particular problem, I just don't know what, if any, services such as that exist; and whether or not they, in fact, would change the situation to any degree." ■ ■■■ The court found by clear and convincing evidence that return of the minors to the parents would create a substantial risk of detriment to the minors' well-being and therefore determined not to presently return them to their parents. The court also found there was little, if any, probability the minors would be returned to the physical custody of the parents within the next six months. The court further found by clear and convincing evidence that the minors were adoptable and ordered county counsel to initiate Civil Code section 232 proceedings.[7] The court ordered the children to continue as dependents of the juvenile court under section 300, subdivision (a) and to continue in their present placement. After the court made its rulings, it further ordered visitation between the parents and minors to increase from one to two hours per week. The court also directed DSS to explore any services available through the San Diego Alliance for the Mentally Ill to assist Jones and Anne. Finally, the court ordered a six-month review and a ninety-day Civil Code section 232 review.[8]

On March 2, 1989, DSS filed a petition under Civil Code section 232 to terminate the parental rights of Jones and Anne. Trial on the petition was scheduled for June 7, 1989. However, on June 6, 1989, we issued a stay of that trial pending our resolution of the issues we now address.

DISCUSSION

I

■■■ Jones and Anne contend the court erred in mechanically applying section 366.25 without considering alternatives less drastic than permanent termination of parental rights. Specifically, they assert the court should have considered guardianship as the appropriate permanency plan.

Section 366.25 states that in order to provide stable, permanent homes for children, a court shall, if the minor cannot be returned home, conduct a permanency planning hearing to determine the future status of the minor.

---

[7] Although the court "ordered" county counsel to initiate Civil Code section 232 proceedings, technically the statute requires the court to "authorize" such proceedings. (§ 366.25, subd. (d)(1).) The decision whether to file a Civil Code section 232 petition is up to the agency authorized to do so and a prior referral from juvenile court is not a prerequisite to agency action. (*In re Candy S.* (1985) 176 Cal.App.3d 329, 331 [222 Cal.Rptr. 43].) Here, DSS did in fact initiate termination proceedings.

[8] The court stayed execution of the order of referral until December 8 to allow counsel to apply for a stay pending appeal. However, the court later denied the motion for stay finding the harm to the parents was not irreparable and a stay would be detrimental to the minors.

(§ 366.25, subd. (a).) Once the court orders a permanency planning hearing to be held, it must then order the appropriate agency to prepare an assessment which shall include "a preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent, particularly the caretaker; and an analysis of the likelihood that the minor will be adopted if parental rights are terminated." (§ 361.5, subd. (g).)

At the permanency planning hearing, the court must first determine whether the minor should be returned to his or her parents. If the minor is not returned, the court must then determine whether there is a substantial probability the minor will be returned to the physical custody of his or her parents within six months. (§ 366.25, subd. (c).) If the court determines the minor cannot be returned to the physical custody of his or her parents and it is not substantially probable the minor will be returned within six months, the court must develop a permanent plan for the minor. (§ 366.25, subd. (d).)

The goal is to enable the minor to obtain a permanent home. (§ 366.25, subd. (d).) Thus, if the court finds it is likely the minor can or will be adopted, the court must authorize the appropriate county or state agency to initiate proceedings to free the minor from the custody and control of his or her parents under Civil Code section 232 unless (1) the parents have maintained regular visitation and contact with the minor and the minor would benefit from continuing this relationship; (2) a minor at least 10 years old objects to termination of parental rights; or (3) the minor's foster parents are unable to adopt the minor because of exceptional circumstances but are willing and able to provide the minor with a stable and permanent environment and removal of the minor from their custody would be seriously detrimental to his or her emotional well-being. (§ 366.25, subd. (d)(1).) Only where the court finds it is not likely the minor can or will be adopted or where one of the exceptions of section 366.25, subdivision (d)(1) applies, must it order the appropriate county department to initiate legal guardianship proceedings or provide for long-term foster care in order to place the minor in a home environment that can reasonably be expected to be stable and permanent. (§ 366.25, subd. (d)(2).)

Under this statutory scheme, the Legislature intended that in assessing the child's best interests in a dependency proceeding, adoption is preferable as a permanent plan if the court determines the child cannot be returned to his or her parents following a reunification period. Once the court determines adoption is feasible, the less desirable and less permanent alternatives of guardianship and long-term foster care need not be pursued. Contrary to Jones's and Anne's argument, DSS is not required to assess a dependent child for guardianship where adoption is likely. The statutory

goal is to place the child in an adoptive home where he or she will have the benefits of stability and security. In this way, the state acts to prevent the psychological harm caused by moving a child from foster home to foster home. (*In re David B.* (1979) 91 Cal.App.3d 184, 195-196 [154 Cal.Rptr. 63].)

■ Here, the record supports the court's finding return of the minors to their parents would be detrimental and there was little, if any, probability the minors could be returned within six months. ■ "If there is any substantial evidence to support the findings of a juvenile court, a reviewing court is without power to weigh or evaluate the findings." (*In re Carrie W.* (1978) 78 Cal.App.3d 866, 872 [144 Cal.Rptr. 427].) ■ Moreover, the record shows the minors, who are under 10 years of age, were not benefiting from the contact with their parents, and the minors' foster parents are willing to adopt them. (§ 366.25, subd. (d)(1).) Where, as here, the court finds the minors are adoptable, it is not required to explore guardianship or other less permanent alternatives.

■ Jones and Anne assert guardianship is the proper permanent plan because even if they are never able to function as fully independent parents, they may, with continued help and a proper reunification plan geared to their mental handicaps, develop a relationship with the minors that would complement the relationship of the minors and their foster parents for the greater benefit of the minors. They further assert there is no urgent need to terminate their parental rights because the minors' aunt and uncle will continue caring for the minors whether as foster parents, guardians or adoptive parents.[9] However, "[i]n enacting section 366.25 . . . the Legislature expressed its preference for 'stable, permanent homes for children' as opposed to foster care placements and other potentially temporary provisions for care given to dependent children. The inclusion in the section of carefully prescribed time periods to report and review of the living situation of dependent children support the conclusion that the Legislature is concerned with the early *adoptability* of such children, and cognizant that the passage of time operates to deprive such children of their chance in this regard.

". . . . . . . . . . . . . . . . . . .

". . . The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by

---

[9] At trial, one of the social workers testified as follows: "I believe the aunt and uncle are so dedicated to these children that if it were adoption or guardianship, they would treat them the same."

someone, at the time the child needs it, not when the parent is ready to give it.

"The Legislature has expressed increasing concern with the perceived and accurate reality that time is of the essence in offering permanent planning for dependent children. . . ." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038-1039 [234 Cal.Rptr. 739], italics in original.)

Moreover, continuity in foster placement is not equivalent to the security and stability of a permanent home. "The goal of permanency planning is to end the uncertainty of foster care and allow the dependent child to form a long-lasting emotional attachment to a permanent caretaker. 'Foster placement, being temporary, does not do the trick because it warns the adults against any deep emotional involvement with the child. Even adoptive parents may hesitate to make a full commitment to the child as long as the placement is not irrevocable.' [Citation.]" (*In re Emily L.* (1989) 212 Cal.App.3d 734, 742 [260 Cal.Rptr. 810], quoting *In re Micah S.* (1988) 198 Cal.App.3d 557, 566 [243 Cal.Rptr. 756] (Bauer, J., conc.).) Although guardianship may be a more stable solution than foster care, it is not irrevocable and thus falls short of the secure and permanent placement intended by the Legislature.

■ Jones and Anne further assert parental rights may only be terminated when less drastic measures are not available. In support of this argument, they cite several cases in which the court terminated parental rights under Civil Code section 232. (See, e.g., *In re Victoria M.* (1989) 207 Cal.App.3d 1317 [255 Cal.Rptr. 498]; *In re Angelia P.* (1981) 28 Cal.3d 908 [171 Cal.Rptr. 637, 623 P.2d 198].) However, Jones's and Anne's argument fails to recognize the differing scheme of duties between dependency courts and courts hearing termination cases. (See *In re Zimmerman* (1962) 206 Cal.App.2d 835, 842-843 [24 Cal.Rptr. 329]; *In re Kristin B.* (1986) 187 Cal.App.3d 596, 604 [232 Cal.Rptr. 36].)

Before the parent-child relationship can be severed on any ground in a Civil Code section 232 proceeding, the court must find it is not in the best interest of the child to return to the custody of his or her parents and termination of parental rights is the least detrimental alternative available to protect the welfare of the child. (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514].) However, no such finding of least detrimental alternative is required to be made by the dependency court at a permanency planning hearing. In the termination proceeding under Civil Code section 232, the court must carefully explore all reasonable alternatives to severing the parental relationship pending efforts to rehabilitate the parents. "Once it has considered these alternatives to severance, it is

within the court's discretion to order further services, if appropriate, or to conclude that further services would not be fruitful. [Citation.]" (*In re Victoria M., supra,* 207 Cal.App.3d at p. 1331.) Jones and Anne will have the opportunity in the termination proceeding to present evidence that immediate termination of their parental rights is not the least detrimental alternative available. (See *In re R. S.* (1985) 167 Cal.App.3d 946, 957 [213 Cal.Rptr. 690].)

 Although Jones and Anne may prefer not to have their parental rights terminated and thus offer guardianship as a less drastic alternative, the Legislature has emphasized it is the child's welfare, not the parents' welfare, that is paramount. (Civ. Code, §§ 232, subd. (b), 232.5, 232.6.) Given the Legislature's express intent to provide permanent, stable homes for minors who cannot be returned to their parents, and the court's findings here that return to their parents would be detrimental to the minors, the minors are not likely to be returned to their parents within the next six months, and the minors are adoptable, the court did not err in failing to consider guardianship as a less drastic alternative to adoption.

## II

 Jones and Anne contend the permanency plan should be reevaluated after they are given an adequate opportunity for visitation to form parent-child bonds. They assert the court determined the minors to be adoptable based primarily on the lack of a parent-child relationship, yet the visits that did occur were few and under circumstances not conducive to parent-child bonding.

Section 361.5 gives parents of children in foster care 12 months, with a possible 6-month extension, to reunify with their children. If the parents are unsuccessful in reunifying within that period, the juvenile court must conduct a permanency planning hearing under section 366.25 to determine the appropriate permanent placement of the child. If the child is adoptable, the court must authorize the initiation of Civil Code section 232 proceedings.[10] At this point, no further reunification services are contemplated. (*In re Emily L., supra,* 212 Cal.App.3d at p. 741.)

Here, Jones and Anne were unsuccessful in reunifying with the minors even though they had ample opportunities for visitation under the reunification plan. The minors were removed from their parents' custody in May 1987 and declared dependents of the juvenile court the next month.

---

[10]The exceptions to the requirement that the court authorize initiation of Civil Code section 232 proceedings, as previously discussed, are not applicable here. (See Discussion I, *ante,* p. 249.)

Between September 1987 and January 1988, Jones was unavailable for visits due to his placement in Patton. During that time, Anne had weekly visits with the minors. After Jones's release from Patton, several visits occurred in the parents' home. The visitation arrangement then changed to supervised visits at DSS because the parents became easily agitated and hostile toward the social worker. However, Jones and Anne cancelled the next several visits because it was difficult or inconvenient for them to take the bus. Another visit did occur at the parents' home on April 19 but was terminated early when Jones threatened the social worker.[11] From April 19 through July 21, the contact between the parents and minors was minimal because the parents cancelled the visits. Thus, the visitation Jones and Anne complain was inadequate was due to their failure to take advantage of the opportunities they had to visit with the minors.

Moreover, both social workers testified the visits between the parents and minors were not significantly beneficial to the minors. The interactions between the parents and minors were often inappropriate. The minors would cry, cling to their aunt and were hesitant to go to their parents. The social worker who supervised the visits testified there was minimal benefit from the interaction between Maryann and her parents. Although there were moments when she seemed to enjoy the interaction with her mother, Maryann seemed uncomfortable and reluctant to participate in the visits. The social worker also observed very little interaction between Jones, Jr., and his mother and minimal positive benefit from that interaction. Jones, Jr., also seemed uncomfortable with his father. Following the visits, the aunt reported bedwetting, crying, baby-talk and out of control behavior by the minors for up to three days. Although the social worker did not testify as to her observations of the visits occurring between August 23 and November 3, she did state that none of the events occurring during that period changed her opinion that adoption was the appropriate permanency plan.

Jones and Anne assert the environment of the visits with the minors—supervised by DSS at its facility—was not conducive to forming a parent-child bond. However, the reason in-home visitation was not feasible and the visits had to be supervised was Jones's use of intimidation and potential for violence as shown by his conviction of assault and battery, his verbal threat to one social worker, and his implied threat by handling a knife in the presence of another social worker.

We disagree that a reassessment should be made of the relationship between the parents and minors at this stage of the proceedings. The minors

---

[11] On another occasion, Jones took out a kitchen knife with a seven-inch blade in the presence of another social worker. He put the knife on a newspaper and began pressing the blade with his thumbs. Although Jones never pointed it at the social worker or threatened her with it, she believed this was inappropriate behavior on Jones's part.

have been in foster care for more than two years and the parents have had ample time to reunify with them. Further delays would not inure to the benefit of the minors. In any event, at the termination hearing, Jones and Anne will have the opportunity to challenge the sufficiency of the reunification services as well as any subsequent events affecting their parenting ability. (*In re Morrow* (1970) 9 Cal.App.3d 39, 55-56 [88 Cal.Rptr. 142].)

## III

In their appeal, Jones and Anne ask this court to undertake a review of the entire record pursuant to *People* v. *Wende, supra,* 25 Cal.3d 436. However, "[a]n order by the court that authorizes the filing of a petition to terminate parental rights pursuant to Section 232 . . . is not an appealable order but may be the subject of review by extraordinary writ." (§ 366.25, subd. (j).) Subdivision (i) of section 366.25 expressly states the statute applies to minors, such as those here, adjudged dependent children before 1989. (*In re T.M.* (1988) 206 Cal.App.3d 314, 316 [253 Cal.Rptr. 535].) Because the court's order is nonappealable, the appeal in D009107 must be dismissed.

## DISPOSITION

The petition is denied; the appeal is dismissed.

Wiener, Acting P. J., and Todd, J., concurred.

A petition for a rehearing was denied October 11, 1989.