[No. D013266. Fourth Dist., Div. One. Nov. 21, 1991.]

In re GERALD J. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Plaintiff and Respondent, v.
GERALD J. et al., Defendants and Respondents;
GERALD J., a Minor, Appellant.

**COUNSEL**

Judith Di Gennaro, under appointment by the Court of Appeal, for Appellant.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and John E. Philips, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

OPINION

FROEHLICH, J.—Minor Gerald J. appeals a permanency planning order of the juvenile court specifying long-term foster care for him and adoption for his younger brother Jimmy J. (Welf. & Inst. Code,[1] § 366.26). We affirm.

FACTS

Gerald was born on September 24, 1977, and Jimmy was born on May 22, 1986. On March 5, 1989, their parents had a violent confrontation. Apparently, the mother drank and instigated fights with the father. The minors were sometimes present during the fights, and Gerald protected Jimmy. After the March 5 confrontation, the police found narcotics on the television in the motel room in which the family was residing. They arrested the parents. The minors were taken to Hillcrest Receiving Home.

On March 7, 1989, a petition was filed under section 300, subdivision (b) on behalf of Gerald and Jimmy. It alleged they were exposed to violent confrontations between their parents. The juvenile court referee ordered the minors detained at Hillcrest Receiving Home, a licensed foster home or adjunct, and said they need not be separated. Gerald was placed in New Alternatives and Jimmy was placed in a foster home. Gerald began counseling on March 15. On April 3, Dr. Terrazas performed a psychological evaluation of Gerald. Terrazas recommended he be placed in a specialized foster home.

On April 10, 1989, the department of social services (Social Services) filed amended petitions adding the allegation the mother's use of alcohol made her unable to care for the minors, and their father had not protected them. The parents failed to come to the April 11 detention hearing. At the April 25 jurisdictional hearing at which the parents were present, the referee found the allegations in the amended petitions true. On May 8, Jimmy was detained in a confidential emergency shelter care home. The parents failed to attend a May 9 hearing. The referee declared the minors dependent and ordered them removed from their parents' custody and placed in a licensed foster home. On May 21, Jimmy was placed in a permanent confidential foster home.

A supplemental petition (§ 387) filed May 31 alleged Gerald had an adjustment disorder with mixed emotional features, anxiety, and depression, requiring special care and treatment. On June 27, Gerald was ordered detained in Hillcrest or an adjunct until placement in a 24-hour school

---

[1] All statutory references are to the Welfare and Institutions Code.

became available. On July 28, Gerald was placed in New Haven Inland 24-hour school.

On October 27, 1989, Jimmy was removed from his permanent placement confidential foster home due to the foster father's alleged physical abuse of another foster child. He was taken to Hillcrest and on October 31 detained in a confidential emergency shelter care home. On November 7, the referee continued the minors as dependent children and ordered Jimmy placed in a confidential licensed foster home and Gerald placed at New Haven Inland. At Gerald's request, the referee ordered Social Services to facilitate visitation between the two brothers. The parents were not at the November 7 hearing and their attorneys had had no contact with them. On November 17, the boys and the parents visited. On November 27, the referee ordered Jimmy placed in a confidential licensed foster home. The parents were present at the November 27 hearing.

On March 2, 1990, the two brothers visited at Jimmy's foster home. Although Gerald was very sad to leave Jimmy behind after the visit, Jimmy did not appear distressed when Gerald left. After the visit, however, the foster mother noted behavioral problems in Jimmy. The social worker planned to have Jimmy assessed by a therapist or psychologist to determine the cause of his behavior. The social worker believed it might have been due to Jimmy's feeling of abandonment after the visit with Gerald ended, or because the visit brought up bad memories.

The social worker's application for an order for the permanency planning hearing recommended the permanent plan for Gerald be long-term foster care and the permanent plan for Jimmy be adoption. The social worker recommended facilitation of visits between the brothers when Gerald stabilized. On May 10, 1990, the referee continued the dependencies and ordered Jimmy continue to be placed in the confidential foster home and Gerald remain in New Haven Inland. He terminated reunification services and set a section 366.26 hearing for August 29.

In an application for an order dated June 14, 1990, the social worker stated she had located a family who would take Jimmy on a foster care basis and wished to adopt him. On June 14, the referee continued Jimmy as a dependent child and ordered he be placed in a confidential foster home to probe the possibilities of adoption. The parents' whereabouts were unknown. They had not completed the reunification plan and had visited the minors only sporadically throughout the dependency.

According to the social worker's assessment dated August 29, 1990, Jimmy's foster parents recognized the importance of the sibling bond,

initiated a visit between Jimmy and Gerald, and stated their commitment to keep the brothers in touch with each other. Jimmy was not attached to Gerald although Gerald was attached to Jimmy. The assessment concluded Jimmy was adoptable but Gerald was not due to his age, institutional placement, and severe emotional disability. It was anticipated he would require 24-hour school for at least 12 more months. Due to Gerald's needs, the children could not be placed together. The assessment recommended adoption for Jimmy, but there was no identified family willing to become Gerald's legal guardian.

On June 22, 1990, the parents were served with notice of the August 29 section 366.26 hearing. They failed to appear at the hearing but were represented by counsel. The mother's attorney asked for a continuance because she had just received the assessment the day of the hearing and had not had the opportunity to discuss it with her client. The father's attorney joined in the request. The mother's counsel argued the assessment should be provided to counsel in time to be able to counter it, if necessary, and the father's attorney added they were entitled to have the report in time to subpoena witnesses. Jimmy's attorney opposed the continuance request, saying his foster parents were expecting to be transferred to Japan before December and hoped to take Jimmy with them. Social Services also opposed the request; Gerald's attorney did not. The referee denied the parents' continuance request without prejudice, saying if during the course of the trial it became apparent there might be further discoverable evidence or an important witness needed to be subpoenaed, he would entertain a renewed motion for a continuance.

According to counsel for Social Services, at the time of the August 29, 1990, hearing, the parents had not seen the child since November 1989.[2] At the August 29 hearing, the social worker testified she had no information the parents had had any contact with Jimmy since November 1989. Gerald's attorney argued against the recommendation Jimmy be adopted. The referee found Jimmy was adoptable and there was an adoptive family, terminated parental rights as to Jimmy, appointed Social Services his guardian, and referred him for adoptive placement. The referee found it was not likely Gerald would be adopted, continued him as a dependent, continued his placement at New Haven Inland, and ordered a permanent plan of long-term foster care.

## DISCUSSION

██ ██ Gerald appeals the permanency planning order specifying long-term foster care for him and adoption for Jimmy, arguing the referee erred in

---

[2] It is unclear which child counsel meant the parents had not seen, or whether she meant they had seen neither child.

not granting counsel's request for a continuance and the referee deprived both brothers of their right of freedom of association as a family.

■ The permanency planning order of long-term foster care for Gerald is appealable. (*In re Corienna G.* (1989) 213 Cal.App.3d 73, 77-78 [261 Cal.Rptr. 462].) Although the permanency planning order of adoption for Jimmy is not appealable (*In re Albert B.* (1989) 215 Cal.App.3d 361, 372 [263 Cal.Rptr. 694]), we treat the appeal as a petition for extraordinary writ (*id.* at pp. 372-373). Accordingly, we discuss the merits.[3]

I

*Continuance Request*

■ Section 366.26 outlines the process for developing a permanent plan for a minor after termination of reunification services. Subdivision (b) provides the court "shall review the report as specified in Section 361.5, 366.21, or 366.22, shall indicate that the court has read and considered it, shall receive other evidence that the parties present . . . ." Section 361.5, subdivision (g); section 366.21, subdivision (i); and section 366.22, subdivision (b) state when the court orders a hearing pursuant to section 366.26 it shall direct the appropriate agency to prepare an adoption assessment. None of these statutes requires the report be served on the parents or their counsel. In section 366.21, subdivision (c), on the other hand, the Legislature has stated a copy of the probation officer's supplemental report is to be provided the parents 10 days before the status review hearing. If the Legislature had intended the adoption assessment be served on the parents and their counsel before the permanency planning hearing, it could have expressly so provided in section 366.26. ■ " 'Where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted.' " (*In re Connie M.* (1986) 176 Cal.App.3d 1225, 1240 [222 Cal.Rptr. 673], quoting *Marsh v. Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891 [134 Cal.Rptr. 844].)

■ Gerald asserts the denial of discovery of the report here violated all parties' right to a fair trial and amounted to a denial of procedural due process. We disagree. Section 366.23, subdivision (a) provides notice of a

---

[3]At oral argument, Gerald's counsel asserted Gerald's standing to appeal. Respondent failed to discuss this point during argument. Furthermore, neither party briefed the matter. Because the standing question was not briefed and in any event is intertwined with the merits of Gerald's contention concerning the permanency planning order, we decline to let the standing issue stand in the way of our consideration of the merits.

section 366.26 hearing is to be given at least 45 days before the hearing, and notice of a recommendation parental rights be terminated must be given at least 15 days before the hearing. Here, counsel were present at the May 10, 1990, hearing at which the court terminated reunification services and set a section 366.26 hearing for August 29. On June 22, the parents were personally served with notice of the section 366.26 hearing. The notice said Social Services was recommending termination of parental rights. The parties were not denied due process or a fair trial.

Section 352 provides a continuance shall be granted only on a showing of good cause, but no continuance shall be granted if it is contrary to the minor's interest. "[T]he court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).) ■ "[T]ime is of the essence in offering permanent planning for dependent children." (*In re Debra M.* (1987) 189 Cal.App.3d 1032, 1038 [234 Cal.Rptr. 739]; accord, *In re Emily L.* (1989) 212 Cal.App.3d 734, 742-743 [260 Cal.Rptr. 810].) A reviewing court will reverse an order denying a continuance only upon a showing of an abuse of discretion. (*In re Angela R.* (1989) 212 Cal.App.3d 257, 265-266 [260 Cal.Rptr. 612].)

■ Here, counsel requested a continuance because they had received the assessment just before the hearing and had not had the chance to discuss it with their clients and counter it. The mother's attorney said she had not been able to reach her client "in quite some time" and the father's attorney said he had not had any contact with his client. It is unclear how a continuance would have changed this situation. The parents had adequate notice of the hearing, and counsel were unable to confer with them only because they failed to appear at the hearing. There is no indication a different result would have occurred had they been present. (*Id.* at p. 266.) The court did not err in denying the continuance request.

## II

### *The Permanency Plans*

■ Admitting the juvenile court law expresses no affirmative duty to keep siblings together, Gerald notes termination of parental rights may be found detrimental to "the" minor if "a" minor 10 years or older objects to termination of parental rights. (§ 366.26, subd. (c)(1)(B).) He concludes "where there [is] more than one minor, and any one of them, of sufficient age and maturity to express such a desire, objects to termination, parental

rights shall not be terminated." However, viewing section 366.26, subdivision (c) with other statutes relating to the minor's wishes (§§ 366.26, subd. (g); 361.5, subd. (g)(5); 366.21, subd. (i)(5); 366.22, subd. (b)(5)), it is clear the Legislature meant the court might consider the minor's objection to the termination of parental rights as to that minor. ■ "It is well established that a specific provision should be construed with reference to the entire statutory system of which it is a part, in such a way that the various elements of the overall scheme are harmonized." (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 489 [134 Cal.Rptr. 630, 556 P.2d 1081].) ■ Moreover, in other situations the legislature has expressly provided for consideration of placement with relatives. (§§ 361.3, subd. (b); 361.2, subd. (b)(1); 319.) For example, section 361.3, subdivision (b) states after removing a child from the parents under section 361, "[c]onsideration shall . . . be given to attempting to place siblings and stepsiblings in the same home if such a placement is found to be in their best interests." Had the Legislature intended to have the court consider a sibling's wishes in forming a permanency plan under section 366.26, it could have expressly so provided. It did not do so. ■ "Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent." (*Craven* v. *Crout* (1985) 163 Cal.App.3d 779, 783 [209 Cal.Rptr. 649].)

■ "The goal of permanency planning is to end the uncertainty of foster care and allow the dependent child to form a long-lasting emotional attachment to a permanent caretaker." (*In re Emily L.*, *supra*, 212 Cal.App.3d at p. 742.) Adoption is preferable to permanency plans of guardianship and long-term foster care. (*Jones T.* v. *Superior Court* (1989) 215 Cal.App.3d 240, 249 [264 Cal.Rptr. 4].) ■ The court did not err in choosing adoption as a permanent plan for Jimmy. While long-term foster care for Gerald is of course not an ideal situation, Jimmy's foster parents intend to keep the brothers in touch with one another, including written communications and telephone conversations while the family is in Japan. The court did not err in choosing long-term foster care as Gerald's permanent plan.

### DISPOSITION

Order affirmed.

Huffman, Acting P. J., concurred.

**NARES, J., Concurring.**—I concur in the result, based upon my interpretation of the relevant statutes mandating the major consideration in this case must focus on Jimmy's best interests. However, I write separately because I

am concerned with the majority's broad statement that juvenile law expresses no affirmative duty to keep siblings together. (Maj. opn., *ante*, at p. 1187.) I disagree with this broad statement because I believe that family relationships, whether parent-and-child or sibling, are equally important in our society. (As Father Flanagan's Boys Town motto states, "He ain't heavy, Father. He's my brother!" (Oursler & Oursler, Father Flanagan of Boys Town (1949) p. 170.)) I would not relieve the juvenile court from an affirmative duty to keep siblings together whenever possible.

Here, this was not possible. Further delays in obtaining stability for Jimmy would not benefit anyone. Where, as here, siblings cannot be placed together, the juvenile court should, however, encourage and promote a continuing sibling relationship between Jimmy and his brother Gerald.

Appellant's petition for review by the Supreme Court was denied March 12, 1992. Mosk, J., was of the opinion that the petition should be granted.