Filed 7/12/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| TAMARA BASKIN,<br><br> Plaintiff and Appellant,<br><br>v.<br><br>HUGHES REALTY, INC.,<br><br>Defendant and Respondent. | B278580<br>(Los Angeles County<br>Super. Ct. No. BC549215) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Metz & Harrison, Jeff A. Harrison and Sara Pezeshkpour for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Gregory F. Hurley and Michael J. Chilleen for Defendant and Respondent.

In the underlying action for disability discrimination, appellant Tamara Baskin alleged that respondent Hughes Realty, Inc. (Hughes) violated the California Disabled Persons Act (DPA) (Civ. Code, §§ 54-55.3.) by providing no designated and accessible path of travel for persons with disabilities within the parking lot of a grocery store.[1] Speecifically, she alleged that under the DPA, the store was obliged to designate an accessible path of travel from the street to the store's entrance that did not require wheelchair-bound patrons to travel behind parked vehicles. The trial court concluded that Baskin's claim, as alleged in her first amended complaint, failed on the undisputed facts. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Baskin suffers from osteogenesis imperfecta, a bone disease that renders her unable to walk or stand independently, and requires her to use a wheelchair in order to be mobile. In June 2014, she initiated the underlying action against respondent Hughes, which operates a Ralphs

---

[1] Further statutory citations are to the Civil Code unless otherwise indicated.

grocery store near appellant's apartment. Baskin's original complaint asserted claims for injunctive relief and damages under the Unruh Civil Rights Act (Unruh Act) (Civ. Code, §§ 51, 52) and other statutes, alleging that the store lacked a designated and accessible path of travel for persons with disabilities to the store's entrance from the adjacent public street.

In September 2015, after learning that Hughes had created a designated path for persons with disabilities in the store's parking lot, Baskin filed her first amended complaint (FAC), which contained claims for damages under the DPA and the Unruh Act relating to the period before Hughes established the path. The FAC alleged that on numerous occasions, the store's lack of a designated path deterred Baskin from going to the store because she was obliged to travel through its parking lot along vehicular lanes and behind parked cars.

In October 2015, Baskin voluntarily dismissed her claim under the Unruh Act. Prior to trial on the remaining claim under the DPA, Hughes filed a motion in limine to exclude all evidence that it had not provided directional signs identifying the accessible path of travel, contending that the FAC alleged no such claim.

At Baskin's request, the trial of her DPA claim was bifurcated. Following a bench trial on the issue of liability, the trial court ruled that the DPA claim failed, concluding that Hughes was not required to provide a marked path of travel that did not pass behind parked cars, and that the

3

FAC pleaded no claim for inadequate signage. On August 16, 2016, judgment was entered in favor of Hughes and against Baskin. This appeal followed.

## DISCUSSION

Baskin challenges the trial court's determinations (1) that an accessible path of travel for persons with disabilities from a street to a store's entrance may pass behind parked cars and (2) that the FAC pleaded no claim for inadequate signage. As explained below, we conclude that she has shown no reversible error.

### A. *Governing Principles*

The DPA establishes protections for persons with disabilities. (*Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 674 (*Munson*).) The substantive protections pertinent here are set forth in sections 54 and 54.1. Subdivision (a) of section 54 imposes a broad prohibition against discrimination, stating: "Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Subdivision (a)(1) of section 54.1 further provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to . . . facilities, . . . including . . . places to which the general public is invited, subject only to the

4

conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons."

Under the remedial provisions of the DPA, disabled persons asserting a violation of sections 54 and 54.1 may obtain an award of damages and attorney fees. Subdivision (a) of section 53 provides that anyone who engages in such a violation "is liable for each offense for the actual damages and any amount as may be determined by a jury, or the court sitting without a jury, up to a maximum of three times the amount of actual damages but in no case less than one thousand dollars . . . and attorney's fees as may be determined by the court in addition thereto . . . ."

Sections 54 and 54.1 do not, by themselves, require business owners to make structural modifications to their facilities. (*Californians for Disability Rights v. Mervyn's LLC* (2008) 165 Cal.App.4th 571, 587 (*Californians for Disability Rights*); *Coronado v. Cobblestone Village Community Rentals, L.P.* (2008) 163 Cal.App.4th 831, 844, (*Coronado*), overruled on another ground in *Munson*, *supra*, 46 Cal.4th at p. 678; *Marsh v. Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 886, 891 (*Marsh*).) Any such requirement, when applicable, arises from two separate sources, namely, the Americans with Disabilities Act of 1990 (ADA) ( 42 U.S.C. § 12101 et seq.), and certain state statutes.

Sections 54 and 54.1 incorporate the ADA's protections against discrimination. Each provision states: "A violation of the right of an individual under the [ADA] also

5

constitutes a violation of this section." (§§ 54, subd. (c), 54.1, subd. (d).) Because the ADA requires the modification of facilities to remove barriers to access whenever "'removal is readily achievable,'" sections 54 and 54.1 incorporate that requirement with respect to barriers to access identified in the ADA regulations. (*Californians for Disability Rights*, *supra,* at p. 589, quoting *Pickern v. Best Western Timber Cove Lodge Marina Resort* (E.D.Cal. 2002) 194 F.Supp.2d 1128, 1131, fn. 4.)

Sections 54 and 54.1 also enforce compliance with disability-related state building standards when a building is constructed or altered. In order to give meaning to the DPA, the Legislature enacted a statutory scheme (Gov. Code, § 4450 et seq.; Health & Saf. Code, § 19955 et seq.) providing for the establishment of building standards designed to ensure accessibility by the handicapped. (*Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 520-521 (*Hankins*); *People ex rel. Deukmejian v. CHE, Inc.* (1983) 150 Cal.App.3d 123, 133 (CHE).)

Under the statutory scheme, buildings are subject to the standards set forth in Title 24 of the California regulatory code, known as the California Building Standards Code (CBSC). (*Californians for Disability Rights*, *supra,* 165 Cal.App.4th at p. 585; *Berkeley Center for Independent Living v. Coyle* (1996) 42 Cal.App.4th 874, 876, fn. 2; Health & Saf. Code, § 18938.3; Gov. Code, § 4451, subd. (c)). The standards are developed by the Division of the State

6

Architect (State Architect) and approved by the California Building Standards Commission. (Gov. Code, § 4450, subd. (b); Health & Saf. Code, § 19955, subd. (a); see *Arnold v. United Artists Theatre Circuit, Inc.* (N.D. Cal 1994) 866 F.Supp. 433, 436; *Plastic Pipe & Fittings Assn. v. California Building Standards Com.* (2004) 124 Cal.App.4th 1390, 1398 (*Plastic Pipe & Fittings Assn.*).) The State Architect and the California Building Standards Commission are obliged to promulgate the CBSC standards in compliance with the Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.), after consultation with specified parties. (Gov. Code, § 4450, subd. (b); Health & Saf. Code, § 18935, subd. (a).) Generally, the standards are revised and republished every three years. (Health & Saf. Code, § 18942, subd. (a).)

By statute, the CBSC standards relating to access for disabled persons may not be less stringent than the corresponding ADA standards. (Gov. Code, § 4450, subd. (c).) Although noncompliance with the CBSC standards is actionable under the DPA, the CBSC generally requires compliance with a standard enacted after a building has constructed only when the building is altered. (*Californians for Disability Rights*, *supra,* 165 Cal.App.4th at p. 586.)

B. *Underlying Proceedings*
1. *FAC*

The FAC alleged that when Baskin visited the Ralphs store by bus or wheeling herself, she encountered significant barriers. According to the FAC, because the store lacked a

7

"designated, accessible path of travel" from the street to the store, gaining access to the store was difficult and dangerous for her. Baskin was required "to wheel herself up the vehicular drive aisle, among moving cars that [were] trying to get into and out of the busy parking lot, and then to wheel herself behind parked cars to the store entrance." The FAC alleged that between April 2013 and March 2015, on more than twenty occasions, the lack of a designated and accessible path deterred Baskin from patronizing the store.

### 2. *Pretrial Proceedings*

Trial on Baskin's DPA claim was set for June 13, 2016. On May 19, 2016, Baskin sought bifurcation of trial with respect to the issues of liability and damages. She requested that the court resolve certain issues of law relating to liability prior to a jury trial on factual issues, stating: "The parties do not dispute the vast majority of material facts. Instead, the dispute centers on whether [Hughes] violated applicable access standards at the times of [Baskin's] visits. [Baskin] contends that [Hughes] violated disabled access standards by (1) failing to provide a properly signed, wheelchair-accessible route from the public right of way to the Ralphs entrance[,] and (2) requiring wheelchair users to travel behind parked cars to the Ralphs entrance. As to the first issue, [Hughes] concedes that no signage was provided. However, it argues that it did not violate disabled access standards because, at the times of [Baskin's] visits, it was not required to provide signage indicating the existence and

8

location of the wheelchair-accessible routes.  As to the second issue, [Hughes] argues that the applicable standards do not prohibit wheelchair users from travelling behind parked cars to reach a facility entrance."

On the same date, Hughes filed a motion in limine to exclude all evidence relating to certain barriers to access Baskin intended to establish at trial, including the purported lack of signs designating the path of travel for persons with disabilities.  Hughes contended it was not obliged to rebut the existence of the barriers because the FAC failed to allege them with sufficient specificity.  Hughes argued, inter alia, that the FAC did not allege that the path of travel Hughes offered -- that is, the path that passed behind parked cars -- must have directional signs identifying it as the accessible route.

At a hearing on June 13, 2016, the trial court granted Baskin's request to bifurcate trial.  The court ruled that it would resolve the issues of liability on the basis of trial briefs and closing arguments presented at a hearing.  For purposes of the bench trial on liability, the parties agreed that during the pertinent period, (1) Baskin was disabled, (2) Hughes operated the store, (3) the path of travel from the street to the store offered to persons with disabilities passed behind parking spaces, (4) there was no marked accessible path, and (5) there was no directional signage.  The parties disagreed regarding the version of the CBSC standards applicable to the store during the period Baskin was allegedly deterred from patronizing it.  The court directed

9

the parties to submit trial briefs addressing the pertinent issues, including whether the FAC pleaded a claim for inadequate signage, and whether the applicable CBSC standards were those promulgated in 2001, in view of alterations to the store in 2007.

### 3. *Trial on Liability*
#### i. *Baskin's Trial Brief*

Baskin's trial brief contended the 2007 alterations to the store required application of the 2001 CBSC standards relating to access for persons with disabilities.[2] Relying on those standards, she argued that a permissible access route could not pass behind parked cars, placing special emphasis on the standards for *parking spaces* for the disabled, which required that such spaces be located as close as possible to

---

[2]     Under the 2001 CSBC standards, section 1114B.1.2 provided:  "At least one accessible route within the boundary of the site shall be provided from . . . public streets or sidewalks, to the accessible building entrance they serve.  The accessible route shall, to the maximum extent feasible, coincide with the route for the general public."  (Former Cal. Code Regs., tit. 24, § 1114B.1.2.)

The 2001 version of section 1129B.3, which addressed "[a]ccessible" *parking spaces*, provided in pertinent part that such spaces "shall be located as near as practical to a primary entrance and shall be sized as follows:  [¶] . . . [¶] 3. Arrangement of parking space. . . .  [T]he space shall be so located that persons with disabilities are not compelled to wheel or walk behind parked cars other than their own."  (Former Cal. Code Regs., tit. 24, § 1129B.3.)

10

an accessible entrance, and positioned so that "persons with disabilities were not compelled to wheel or walk behind parked cars other than their own."  (Former Cal. Code Regs., tit. 24, §§ 1114B.1.2, 1129B.3.3.)  Baskin further maintained that the 2001 CBSC standards required signage identifying the accessible path.[3]

Baskin opposed Hughes's contention that the FAC pleaded no claim for inadequate signage.  Noting that the 2001 CBSC standards characterized an "accessib[le]"path as one meeting those standards, Baskin argued that because the FAC asserted the absence of a "*designated, accessible* path of travel," it necessarily alleged that Hughes had not complied with the 2001 CBSC signage standards.  (Italics added.)

ii.  *Hughes's Trial Brief*

Hughes' trial brief contended that notwithstanding the 2007 alteration to the store, Baskin's DPA claim was properly evaluated in light of the 2013 CBSC standards, as the occasions on which she was allegedly deterred from

---

[3]     Baskin relied on the 2001 version of section 1127B.3, which stated:  "At every primary public entrance and at every major junction where the accessible route of travel diverges from the regular circulation path along or leading to an accessible route of travel, . . . there shall be a sign displaying the International Symbol of Accessibility.  Signs shall indicate the direction to accessible building entrances and facilities . . . ."  (Former Cal. Code Regs., tit. 24, § 1127B.3).

11

shopping at the store occurred between April 2013 and March 2015.  Hughes argued that "compliance with existing law of the time of [Baskin's] visits provides a safe harbor regardless of the alteration history of the subject property. . . .  It goes without saying that there cannot possibly be a violation when the subject property complied with existing law at the time of [Baskin's] visits."  (Italics omitted.)  Hughes also pointed to former section 18944.15 of the Health and Safety Code, which provided that for purposes of specified DPA claims alleging a violation of CBSC accessibility standards, compliance with the 2013 CBSC standards was "an alternative method of compliance."

Hughes contended the 2013 CBSC standards permitted accessible paths to include vehicular routes and routes passing behind parked cars, arguing that the standards "plainly contemplate[d] that disabled individuals will use the same circulation paths that non-disabled individuals use . . . ."  Hughes further argued that the corresponding ADA standards, as well as the 2010 and 2001 CBSC standards, permitted accessible paths to pass through vehicular lanes in store parking lots.

Hughes maintained that the FAC contained no claim for inadequate signage, relying on the principle that statutory claims must be alleged with specificity. Additionally, Hughes contended any such claim failed, arguing that the 2013 CBSC standards required signs only when an accessible route offered to persons with disabilities did not coincide with the route used by the general public.

12

### iii. *Closing Arguments*

At the hearing on the liability issues, in response to the trial court's request for clarification of the DPA claim, Baskin's counsel stated that during the pertinent period, the store lacked a route for wheelchair users through the parking lot from the street to the store's entrance (1) that passed behind no parked cars and (2) was designated by suitable signs.[4] Counsel did not contest Hughes's contention that the ADA mandated no such route, but argued that the 2001 CBSC standards required safe access routes permitting wheelchair users to move from a facility's "entry points" -- namely, bus stops, sidewalks, and parking spaces -- to its entrance without passing behind parked cars. Counsel further argued that the FAC alleged the absence of required signage.

Hughes's counsel contended that neither the 2013 CBSC standards nor their predecessors -- namely, the 2001 and 2010 CBSC standards -- required Hughes to provide a path of travel that passed behind no parked cars and was designated by signs. Counsel also argued that the FAC failed to plead a claim for inadequate signage.

---

[4]    According to Baskin's counsel, she did not contend that an adequate route could not make use of the parking lot's vehicular lanes.

13

iv. *Statement of Decision*

In a detailed statement of decision, the court rejected Baskin's contention that the 2001 CBSC standards applied to her DPA claim. Applying the 2013 CBSC standards, the court determined that Hughes was not required to establish a path of travel from the street to the store that did not pass behind parked cars. The court further determined that the FAC pleaded no claim for inadequate signage.

C. *Ruling that Accessible Path May Pass Behind Parked Cars*

We begin with Baskin's challenges to the trial court's ruling that the CBSC standards did not require Hughes to provide a path of travel that did not pass behind parked cars. Because that ruling constitutes a determination of law on undisputed facts, we review it de novo. (*Limited Stores, Inc. v. Franchise Tax Bd.* (2007) 152 Cal.App.4th 1491, 1495; see *Motion Picture Studio Teachers & Welfare Workers v. Millan* (1996) 51 Cal.App.4th 1190, 1196 ["The interpretation of a regulation, like the interpretation of a statute, presents a question of law"].)[5] Our inquiry into the

---

[5] Generally, in construing a regulation, we apply the rules of statutory interpretation. (*Brewer v. Patel* (1993) 20 Cal.App.4th 1017, 1021.) "The fundamental rule of interpretation is to ascertain the intent of the agency issuing the regulation so as to effectuate the purpose of the law. [Citation.] To determine that intent, we turn first to the words of the regulation, giving effect to the usual meaning of the language used, while avoiding an
(*Fn. is continued on the next page.*)

14

ruling is nonetheless limited to contentions supported by argument in Baskin's briefs.  (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 844, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp. 769-771.)[6]

### 1. *Determination that the 2013 CBSC Standards Govern the DPA Claim*

Baskin contends the trial court erred in evaluating her DPA claim solely in light of the 2013 CBSC standards, arguing that the FAC's allegations also required application

interpretation which renders any language mere surplusage. [Citation.]  When statutory language is clear, we must apply that language without indulging in interpretation.  [Citation.]" (*Ibid.*)

[6]     Although Baskin agrees that our review is de novo, her briefs suggest the trial court improperly limited the issues and evidence submitted at the trial on liability.  However, an appellant forfeits the right to attack error by expressly or impliedly agreeing at trial to the procedure objected to on appeal. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166.)  Here, in seeking the bifurcation of trial, Baskin identified the issues relating to the routes Hughes offered as questions of law.  Aside from opposing Hughes's contention that the FAC failed to plead a signage-based claim, Baskin challenged no evidentiary limitation other than the exclusion of testimony from her expert, which the court barred on the ground that it concerned only issues of law.  Because Baskin does not discuss that ruling on appeal and raised no relevant procedural objections during the trial, she has forfeited her contentions of error, with the exception of her challenge to the ruling that the FAC pleaded no signage-based claim.

15

of the 2010 CBSC standards. The FAC alleged that on specific dates between April 2013 and March 2015, the lack of an accessible path deterred her from shopping at the store. Although the 2013 CBSC standards were published in 2013, they became effective on January 1, 2014. (See Health & Saf. Code, § 18398, subd. (b).) Baskin's opening brief argues that the occasions on which she was allegedly deterred from patronizing the store in 2013 must be evaluated under the prior standards, that is, the 2010 CBSC standards. As explained below, Baskin's contention fails, as her briefs on appeal, viewed collectively, identify no error in the court's conclusion that the 2013 CBSC standards applied to all the incidents identified in the FAC.

At the outset, we observe that Baskin has abandoned the contention she presented to the trial court, namely, that the DPA claim must be evaluated under the 2001 CBSC standards, as her briefs do not discuss or mention that contention. For that reason, our focus is on whether any of the incidents alleged in the FAC are subject to the 2010 CBSC standards.

In applying the 2013 CBSC standards to all the incidents alleged in the FAC, the trial court relied on two factors, namely, considerations of due process, which the court concluded "permit[ted] a finding of liability based only on the law in effect when the alleged offending act occur[red]," and former section 18944.15 of the Health and Safety Code. Subdivision (a) of the latter statute stated that "for the purpose of any claim" under the DPA asserting a

16

violation of a CBSC accessibility standard, "[u]pon the publication date of the 2013 [CBSC standards] . . . , compliance with the building standards for disabled accessibility as provided in [the 2013 CBSC standards] shall be authorized as an alternative method of compliance."  The statute, by its own terms, specified time limits for the "alternative method of compliance" set forth in subdivision (a), including that the statute was operative only until January 1, 2015.[7]

The trial court thus appears to have concluded that an incident alleged in the FAC was properly assessed under the

---

[7]    Former section 18944.15 of the Health and Safety Code provided:  "(a)  Upon the publication date of the 2013 California Building Standards Code as adopted by the commission as part of the 2012 triennial code adoption cycle, for the purpose of any claim brought under Section 51, 54, 54.1, or 55 of the Civil Code based in whole, or in part, on an alleged violation of a construction-related accessibility standard, compliance with the building standards for disabled accessibility as provided in Chapter 11B of Part 2 of Title 24 of the 2013 California Building Standards Code shall be authorized as an alternative method of compliance.

(b)  Subdivision (a) shall become inoperative when the provisions of the 2013 California Building Standards Code become effective pursuant to Section 18938.

(c)  This section shall become operative on January 1, 2013.

(d)  This section shall remain in effect only until January 1, 2015, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2015, deletes or extends that date."  (Stats. 2012, ch. 383, §23.)

17

building standards in effect on the date of the incident, unless former section 18944.15 of the Health and Safety Code permitted the application of the 2013 CBSC standards. Applying that rationale, the court impliedly determined (1) that the alleged incidents that occurred after the effective date of the 2013 CBSC standards -- that is, January 1, 2014 -- were directly subject to those standards, and (2) that the remaining alleged incidents -- which occurred in 2013 -- were subject to the 2013 CBSC standards, by virtue of former section 18944.15 of the Health and Safety Code.

Baskin has shown no error in those determinations. Her opening brief accepts item (1), and otherwise contains no discussion of former section 18944.15 of the Health and Safety Code. Although her reply brief attacks the court's reliance on that statute, she contends only that the statute did not apply to incidents that allegedly occurred *in 2015* because the statute was then inoperative. However, the statute is irrelevant to whether those incidents are subject to the 2013 CBSC standards because -- as Baskin's opening brief acknowledges -- they occurred after January 1, 2014, the effective date of the 2013 CBSC standards. Accordingly, Baskin has failed to show that the trial court erred in evaluating her DPA claim exclusively under the 2013 CBSC standards.

## 2. *Determination that Paths May Pass Behind Parked Cars*

Baskin contends the trial court erred in determining that under the 2013 CBSC standards, Hughes was not required to provide an accessible route that did not pass behind parked cars for persons using wheelchairs. As explained below, we disagree.

Hughes relied on section 11B-206.2.1 (2013 section 11B-206.2.1), which provided that "[a]t least one accessible route shall be provided within the site from . . . public streets and sidewalks," and section 11B-206.3 (2013 section 11B-206.3), which stated that accessible routes "shall coincide with or be located in the same area as general circulation paths."[8] (Cal. Code Regs., tit. 24, §§ 11B-206.2.1,

---

[8] 2013 CBSC 11B-206.2.1 states: "Site arrival points. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve. Where more than one route is provided, all routes must be accessible.

Exceptions:

1. Reserved

2. An accessible route shall not be required between site arrival points and the building or facility entrance if the only means of access between them is a vehicular way not providing pedestrian access.

3. General circulation paths shall be permitted when located in close proximity to an accessible route." (Italics omitted.)

(*Fn. is continued on the next page.*)

19

11B-206.3.)  At the hearing on liability, the parties submitted maps and overhead photos of the store's parking lot, which showed that between rows of painted parking places, there were vehicular lanes leading from the adjacent streets to the store's entrances.  We agree with the trial court that nothing in the 2013 CBSC regulations precluded those vehicular lanes from serving as accessible routes merely because they passed rows of parking places.[9]

We find further support for our conclusion from the related ADA standards.  Because the State Architect and the California Building Standards Commission are required by statute to promulgate CBSC standards not less stringent

---

2013 CBSC section 11B-206.3 states:  "Location.  Accessible routes shall coincide with or be located in the same area as general circulation paths.  Where circulation paths are interior, required accessible routes shall also be interior.  An accessible route shall not pass through kitchens, storage rooms, restrooms, closets or other spaces used for similar purposes, except as permitted by Chapter 10."  (Italics omitted.)

[9]      Baskin suggests the trial court erroneously found that Hughes provided her with a safe route, arguing that no evidence was submitted regarding the safety of any route across the parking lot.  However, the statement of decision contains no such finding.  Baskin's contention relies on the trial court's characterization of Hughes's position at trial, namely, that it had complied "with both the federal ADA requirements and state law, which generally require[] that [Baskin] have the same safe path of travel as for a non-disabled person."  Although the court agreed that Hughes had complied with the 2013 CBSC standards, it rendered no express finding regarding safety.

20

than the corresponding ADA standards, the latter offer a baseline for evaluating the intent underlying the former. Hughes directed the trial court's attention to pertinent ADA regulations (see 28 C.F.R. (2012) § 36.104, appendix to § 36.304(d)), including the 2010 ADA Standards for Titles II and III Facilities (2010 ADA Standards) as well as the 1991 Accessibility Guidelines for Buildings and Facilities (1991 ADA Standards). Hughes also pointed to the guidance notes accompanying the 2010 standards prepared by the United States Department of Justice (Justice Department). Because the Justice Department is authorized to enforce the ADA, its guidance notes are entitled to deference by courts seeking to construe the ADA. (*Wilson v. Murillo* (2008) 163 Cal.App.4th 1124, 1138; see *Hankins*, *supra*, 63 Cal.App.4th at pp. 523-524.)

The ADA standards permit accessible routes through parking lots to use vehicular lanes, and contain no express restriction barring routes from passing behind parked cars. Sections 206.2.1 and 206.3 of the 2010 ADA Standards, which are materially identical to sections 11B-206.2.1 and 11B-206.3 of the 2013 CBSC regulations, have been interpreted by the Justice Department to permit access routes in the area of the "general circulation path" that involve vehicular lanes.[10] The guidance notes accompanying

---

[10]    Section 206.2.1 of the 2010 ADA Standards provides: "Site Arrival Points. At least one accessible route shall be provided within the site from accessible parking spaces and accessible (*Fn. is continued on the next page.*)

21

the 2010 ADA Standards state that an access route "must be in the same area as the general circulation path" and "may include vehicular ways."  Similarly, the 1991 ADA Standards state that "[t]he accessible route shall, to the maximum extent feasible, coincide with the route for the general public," and may include "parking access aisles" and "crosswalks at vehicular ways."[11]  Although our research

passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.

EXCEPTIONS:

1. Where exceptions for alterations to qualified historic buildings or facilities are permitted by 202.5, no more than one accessible route from a site arrival point to an accessible entrance shall be required.

2. An accessible route shall not be required between site arrival points and the building or facility entrance if the only means of access between them is a vehicular way not providing pedestrian access."   (Italics omitted.)

Section 206.3 of the 2010 ADA Standards provides: "Location. Accessible routes shall coincide with or be located in the same area as general circulation paths.  Where circulation paths are interior, required accessible routes shall also be interior."

[11]     Section 3.5 of the 1991 ADA Standards states in pertinent part:  "Exterior accessible routes may include parking access aisles, curb ramps, crosswalks at vehicular ways, walks, ramps, and lifts."

Section 4.3.2(1) of the 1991 ADA Standards states:  "At least one accessible route within the boundary of the site shall be provided from public transportation stops, accessible parking, and (*Fn. is continued on the next page.*)

22

has disclosed no judicial decision expressly addressing whether the ADA permits a route passing behind parked cars, several courts have construed the ADA standards to permit routes through parking lots that make use of vehicular lanes  (*Wilson v. Pier 1 Imports (US), Inc.* (E.D.Cal 2006) 439 F.Supp.2d 1054, 1071 [ADA imposed no requirement for separate access route from public sidewalks to store not using store's parking lot]; *White v. Divine Investments, Inc.* (E.D.Cal. 2005, No. CIV. S-04-0206 FCD/DAD) 2005 U.S. Dist. LEXIS 23018, *26 & fn. 12 [ADA imposed no requirement for separate path from street to store not making use of  the "vehicle ways"]; *Barnes-Boers v. TRU 2005 REI, LLC* (E.D. Cal. 2014, No. 2:13-CV-1827-WBS-CMK) 2014 U.S. Dist. LEXIS 50670, *8-*12 [ADA imposed no requirement for separate path through parking lot from street to store not shared by vehicles].)

In our view, because the 2013 CBSC standards closely track the 2010 ADA standards, the former cannot reasonably be understood to bar routes making use of vehicular lanes between rows of parking spaces.  Aside from requiring that the CBSC standards be no less stringent than the ADA standards, the statutory scheme governing the CBSC obliges the State Architect and the California

---

accessible passenger loading zones, and public streets or sidewalks, to the accessible building entrance they serve.  The accessible route shall, to the maximum extent feasible, coincide with the route for the general public."

Building Standards Commission to promulgate the CBSC standards only after consulting with specified parties, including at least one private organization representing persons with disabilities.  (Gov. Code, § 4450, subd. (b); Health & Saf. Code, § 18935, subd. (a).)  In view of these procedural requirements, we conclude that had the State Architect and the California Building Standards Commission intended to bar routes making use of vehicular lanes between rows of parking spaces, they would not have propounded regulations materially identical to the ADA standards.

For the first time on appeal, Baskin contends that under section 11B-502.7.1 of the 2013 CBSC standards, accessible routes for wheelchair users may not pass behind parked cars.  That provision required that *parking spaces* for persons with disabilities and the "access aisles" serving those spaces -- that is, the "pedestrian spaces" immediately adjacent to such spaces -- be designed "so that *persons using them* are not required to travel behind parking spaces other than to pass behind the parking space *in which they parked*."  (Cal. Code Regs., tit. 24, §§ 11B-202, 11B-502.7.1, italics added.)  The provision resembles the 2001 CBSC standards upon which Baskin relied before the trial court, which imposed a similar requirement.  The court rejected Baskin's contention, concluding that the requirement in question attached solely to parking places for the disabled.

We reach the same conclusion under the 2013 CBSC standards.  In view of the language italicized above, the

requirement applies solely to the parking spaces delegated to persons with disabilities.  Had the State Architect and the California Building Standards Commission intended that requirement to include all accessible routes, they could have said so in simple express terms.  (See *Goebel v. City of Santa Barbara* (2001) 92 Cal.App.4th 549, 559.)

Relying primarily on *CHE*, *supra*, 150 Cal.App.3d 123, Baskin also contends that because the CBSC standards and the related statutes -- including the DPA -- promote equality of access for the disabled, they incorporate a particular mandate for safety that bars accessible routes from traveling behind parked cars.  She argues that under the statutes and regulations, equality of access involves an "[e]quality of [s]afety" principle, which necessarily prohibits a route for wheelchair users that passes behind parked cars, in view of the special hazards such a route poses for them.  As explained below, Baskin has failed to demonstrate that the specific prohibition she advocates is required by the statutes in question or the CBSC standards.

Our focus is on the CBSC standards and the statutory scheme governing their promulgation, as it is well established that the DPA, by itself, "does *not* impose an affirmative duty to eliminate access barriers except as required by specific building standards," notwithstanding "the DPA's general guarantee of 'full and equal access.'" (*Californians for Disability Rights*, *supra,* 165 Cal.App.4th at p. 587; *Coronado*, *supra*, 163 Cal.App.4th at p. 845 ["[I]n order to state a cause of action for violation of [the DPA]

25

based on a structural or architectural barrier, the existence of the barrier must violate a separate provision of law relating to structural access standards"]; *Marsh, supra,* 64 Cal.App.3d at p. 888 [DPA enforces affirmative duties imposed under other provisions specifying building requirements].) As noted above (see pt. A. of the Discussion, *ante*), the statutory scheme governing the CBSC standards requires the State Architect and the California Building Standards Commission to promulgate the standards upon consultation with specified parties and in compliance with the APA, which provides for input from the public.[12]

Under the scheme, the approval of the CBSC standards by the California Building Standards Commission is "a quasi-legislative act of administrative rulemaking." (*Plastic Pipe & Fittings Assn., supra,* 124 Cal.App.4th at p. 1406.) As our Supreme Court has explained, "[b]ecause

---

[12] "The APA is intended to advance 'meaningful public participation in the adoption of administrative regulations by state agencies' and create 'an administrative record assuring effective judicial review.' [Citation.] In order to carry out these dual objectives, the APA (1) establishes 'basic minimum procedural requirements for the adoption, amendment or repeal of administrative regulations' [citation] which give 'interested parties an opportunity to present statements and arguments at the time and place specified in the notice and calls upon the agency to consider all relevant matter presented to it,' and (2) 'provides that any interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court.' [Citation.]" (*Voss v. Superior Court* (1996) 46 Cal.App.4th 900, 908-909.)

agencies granted such substantive rulemaking power are truly 'making law,' their quasi-legislative rules have the dignity of statutes.  When a court assesses the validity of such rules, the scope of its review is narrow.  If satisfied that the rule in question lay within the lawmaking authority delegated by the Legislature, and that it is reasonably necessary to implement the purpose of the statute, judicial review is at an end."  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 10-11 (*Yamaha Corp.*).)  As the agency necessarily exercises "a considerable degree of policy-making judgment and discretion," an appellate court does not "'superimpose its own policy judgment . . . .'" (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 702.)  Accordingly, although we independently interpret the 2013 CBSC standards, our review of the adequacy of those standards to achieve the statutory goals is limited.  (*Yamaha Corp., supra*, at pp. 7, 10-11; 9 Witkin, Cal. Procedure (5th ed. 2008) Administrative Proceedings, §§ 133, 138, pp. 1261-1263, 1267-1270.)

Here, Baskin contends that the 2013 CBSC standards, properly interpreted, bar accessible routes for wheelchair users from passing behind parked cars.  As explained above, those standards impose no such prohibition.  Because Baskin does not challenge the validity of the 2013 CBSC standards, insofar as they constitute acts of quasi-legislative rulemaking, she has otherwise failed to show that the statutory scheme mandates the prohibition she advocates.

Baskin's reliance upon *CHE* is misplaced.  *CHE* arose under the statutory scheme as originally enacted, which directed the State Architect to develop suitable building standards, and in the interim, required builders to adhere to certain standards set forth by the American Standards Association (ASA standards).  (*CHE*, *supra*, 150 Cal.App.3d at p. 131.)  Those standards obliged buildings to have "'at least one primary entrance . . . useable by individuals in wheelchairs.'" (*Ibid.*, italics omitted.)  While the ASA standards were in force, a newly-built restaurant offered wheelchair users access to its dining room only, via a special route passing through the restaurant's kitchen and scullery area.  (*CHE*, *supra*, at pp. 127-129.)  When a state agency sought to compel the restaurant to satisfy the ASA standards, the trial court granted summary judgment in the agency's favor.  (*CHE*, *supra*, at pp. 127-129.)

On appeal, the restaurant contended the access it offered constituted an adequate "primary entrance."  (*CHE*, *supra*, 150 Cal.App.3d at p. 131.)  In rejecting that contention, the appellate court construed the ASA standards in light of the Legislature's intent to achieve "'full and equal access,'" concluding that "the statutory and regulatory law, read as a whole, [was] designed to guarantee safe access for the physically disabled while permitting them to function as equals to the maximum extent feasible within every aspect of society."  (*CHE*, *supra*, at pp. 132,134.)  The court stated that "equality, at minimum, requires access free from . . . potential hazards which would endanger even the most

28

cautious physically handicapped," and that the statutory scheme is designed to lessen burdens on persons with disabilities "by guaranteeing equal and full access to public buildings, facilities, and accommodations, without jeopardizing their safety." (*Id.* at pp. 134-135.)

*CHE* provides no assistance to Baskin. That case focused on the interpretation of a specific term within an ASA standard -- namely, "primary entrance" -- which the appellate court concluded was reasonably construed to exclude the entrance provided by the restaurant. As no regulatory entity had promulgated the ASA standard, the court looked to the Legislature's intent in enacting the statutory scheme. However, Baskin has identified no term or phrase within the pertinent 2013 CBSC standards which, reasonably construed, expresses the prohibition she advocates, and no evidence that it was the intent of the California Building Standards Commission to impose that prohibition. Because the 2013 CBCS standards do not contain the prohibition critical to Baskin's DPA claim -- that routes for wheelchair users may not pass behind parked cars -- her claim fails.

Furthermore, although we agree with *CHE* that the Legislature's intent was to devise a system aimed at achieving full and equal access for persons with disabilities with due attention to their safety, we see nothing in *CHE* supporting the existence of the "[e]quality of [s]afety" principle upon which Baskin relies. *CHE* affirms that adequate safety is a key factor in equality of access for

29

persons with disabilities, but does not discuss or mention any such principle.[13]

In our view, any such "equality of safety" principle would render the statutory scheme governing the CBSC standards unworkable. Because some disabilities may create ineradicable risks of injury, it would be difficult or impossible to devise building standards that equalized the risk of injury for everyone. Furthermore, because disabilities may create different risks of injury, it would be difficult or impossible to devise feasible standards that

---

[13] The same is true of *Barrilleaux v. Mendicino County* (N.D.Cal. 2014) 61 F.Supp.3d 906 (*Barrilleaux*), which Baskin also contends invokes the "[e]quality of [s]afety" principle. There, the plaintiff asserted a claim under the ADA and other federal laws, alleging that she walked with difficulty due to knee surgery, that she was denied equal access to court facilities because she was required to make an appearance in a fourth floor courtroom in a courthouse lacking an elevator, and that she suffered injury when she fell in a courthouse stairwell after the appearance. (*Barrilleaux, supra,* at pp. 915-916.) The trial court concluded that these allegations pleaded a claim under the ADA, stating: "That [the p]laintiff was able to make her way to her court appearance, and only subsequently fell on her way down from the courtroom, does not mean that the court facilities were fully and equally available to her. [The p]laintiff's inability to exit the courtroom safely and make her way to the Clerk's office is at least a partial barrier to her access to the court facilities." (*Barrilleaux, supra,* at p. 916.) Although *Barrilleaux* reflects that adequate safety is a determinant of equality of access, it does not predicate equality of access on equality of safety.

eliminated the specific heightened risk attending each such disability.

Baskin maintains that the trial court erred in its application of the 2013 CBSC standards, arguing that the record discloses a material factual dispute that must be resolved in her favor. The crux of her contention is that the stipulated facts and evidence at trial conclusively established that the routes Hughes actually offered to wheelchair users did not comply with the 2013 CBSC standards. As explained below, we disagree.

Although Baskin did not assert the existence of the purported factual dispute at trial, she argues that it was identified in her trial brief, which stated that "[a]t [the] Ralphs [store], like any other shopping center, pedestrians could choose to reach the entrance by walking between the cars parked in the parking lot. . . . Wheelchair users do not have this option because . . . a wheelchair cannot fit between two parked cars." On appeal, she contends this presents a factual issue whether the routes Hughes offered to wheelchair users -- which made use of the vehicle lanes -- coincided with, or were located in the same area as the "'general circulation paths,'" for purposes of 2013 section 11B-206.3. She further argues that although the stipulated facts did not resolve that issue, the maps and photos she submitted at trial conclusively showed that the routes

Hughes offered to wheelchair users diverged from those "available to ambulatory individuals."[14]

In view of the evidence presented at trial, the issue Baskin identifies is one of law, not fact. Generally, the application of statutes and regulations to stipulated and undisputed facts presents a question of law. (*Chen v. Franchise Tax Bd.* (1998) 75 Cal.App.4th 1110, 1114; *Davenport v. Unemployment Ins. Appeal Bd.* (1994) 24 Cal.App.4th 1695, 1697.) At the trial on liability, there was no dispute regarding the layout of the store's parking lot, as the parties relied on essentially similar maps and overhead photos. The maps and photos established that the store's parking lot was arranged in an unexceptional manner: rows of painted parking spaces within the lot defined vehicular lanes leading from the public streets to the store. That evidence unequivocally showed that the route from each

---

[14] In a related contention, Baskin maintains that the evidence presented to the trial court was insufficient to resolve whether the routes offered to Baskin complied with other potentially applicable 2013 CBSC standards. Because Baskin did not raise those standards before the trial court, she has forfeited her contention. As explained in *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879, "an appellate court may allow an appellant to assert a new theory of the case on appeal where the facts were clearly put at issue at trial and are undisputed on appeal. [Citation.] However, 'if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at trial the opposing party should not be required to defend against it on appeal. [Citations.]' [Citation.]" That is the case here.

street to the store offered to wheelchair users -- along the vehicular lanes -- fell directly within the circulation path offered to the general public.  Accordingly, the trial court did not err in concluding that Hughes offered "[a]t least one accessible route" that was "located in the same area as general circulation paths."  (Cal. Code Regs., tit. 24, § 11B-206.3.)  In sum, under the 2013 CBSC standards, Hughes was not required to provide an accessible route that did not pass behind parked cars for persons using wheelchairs.

D.  *Ruling Regarding Signage-Based Claim*

Baskin contends the trial court erred in rejecting her DPA claim insofar as it was predicated on inadequate signage.  Prior to trial, Hughes filed a motion in limine to exclude all evidence relating to inadequate signage on the ground that the FAC pleaded no such claim.  At the trial on liability, the court determined that the FAC failed to plead a signage-based claim.  Baskin challenges that ruling, arguing that the court applied excessively stringent pleading requirements.  As explained below, we discern no error in the trial court's ruling.

1. *Governing Principles*

"'An objection to the introduction of any evidence on the ground that a complaint fails to state a cause of action is in the nature of a general demurrer to the complaint or a motion by a defendant for judgment on the pleadings.' [Citation.]"  (*Clemens v. American Warranty Corp.* (1987)

33

193 Cal.App.3d 444, 451, quoting *Miller v. McLaglen* (1947) 82 Cal.App.2d 219, 223.)  Such motions are reviewed de novo under the standards applicable to judgments following the sustaining of a demurrer.  (See *Ott v. Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448.)  Thus, an objection to all the evidence is properly sustained when even if the plaintiff's allegations were proved, they would not establish a cause of action.  (*Clemens*, *supra*, at p. 451.)

Generally, "[w]he[n] a party relies for recovery upon a purely statutory liability it is indispensable that he plead facts demonstrating his right to recover under the statute. The complaint must plead every fact which is essential to the cause of action under the statute." (*Green v. Grimes-Stassforth S. Co.* (1940) 39 Cal.App.2d 52, 56 (*Green*).)

In addition to contending the FAC pleaded no signage-related claim, Hughes's trial brief asserted that any such claim failed on its merits, arguing that under the 2013 CBSC standards, directional signs were not required for the route provided to wheelchair users at the store.  Hughes relied on section 11B-216.6 (2013 section 11B-216.6) which states:  "Directional signs . . . indicating the accessible route to the nearest accessible entrance shall be provided at junctions when the accessible route diverges from the regular circulation path."  (Former Cal. Code Regs, tit. 24, § 11B-216.6.)[15]  Hughes also pointed to the related State

---

[15]    2013 section 11B-216.6 provides:  "In existing buildings and facilities where not all entrances comply with [accessibility
(*Fn. is continued on the next page.*)

Architect advisory note, which states: "Directional signs are needed where the accessible route diverges from the route for the general public and should be located at decision points . . . . Directional signs are not needed where paths are equal and/or readily apparent. . . . [¶] . . . Too many signs can be confusing to everyone utilizing the site."

### 2. *Analysis*

Baskin has offered two distinct theories in support of a signage-based claim. Under the first theory, Baskin asserts that Hughes failed to provide a suitably signed path that did not require her to pass behind parked cars; under the second theory, Baskin asserts that Hughes failed to provide signs showing the actual route or routes from the street to the store. We discuss each theory separately.

### a. *Lack of Signage Identifying Path Not Passing Behind Parked Cars*

Baskin's first theory is directly tied to certain allegations in the FAC that Baskin asserted at trial, namely,

standards], entrances complying with [those standards] shall be identified by the International Symbol of Accessibility . . . Directional signs . . . that indicate the location of the nearest entrance complying with [accessibility standards] shall be provided at entrances that do not comply with [accessibility standards]. Directional signs . . . indicating the accessible route to the nearest accessible entrance shall be provided at junctions when the accessible route diverges from the regular circulation path." (Italics omitted.)

that the store's parking lot lacked a "designated, accessible path of travel" from the street to the store that did not pass behind parked cars.  The FAC clearly distinguishes that missing path from the path that Baskin actually used to patronize the store, as the FAC alleges:  "The lack of a designated, accessible path to [the store] means that . . . *the only way* for [Baskin] to get to the [store's] entrance is to wheel herself up the vehicular drive aisle, among moving cars that [were] trying to get into and out of the busy parking lot, and then to wheel herself behind parked cars to the store entrance."  Under this theory, Baskin's signage-based claim asserts that inadequate signage is a feature of the missing path, rather than of any path Baskin may have actually used.

It is unnecessary to address whether the FAC's allegations adequately pleaded the first theory because that theory fails on its merits.[16]  As discussed above (see pt. C. of

---

**16**     As we review the trial court's ruling, not its reasoning (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15), we will affirm the trial court's ruling on any theory established by the record (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1).  This principle is applicable even when the statement of decision lacks findings related to the theory, provided that the record unequivocally establishes the requisite facts.  (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 63-64; see *McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 996 [failure to make finding in statement of decision is harmless when the record conclusively establishes
(*Fn. is continued on the next page.*)

the Discussion, *ante*), the 2013 CBSC standards did not require Hughes to create the missing accessible route described in the FAC. For that reason, the 2013 CBSC standards cannot reasonably be regarded as mandating directional signs identifying any such route.

### 3. *Lack of Signage Identifying Actual Paths*

Baskin's second theory, as set forth in her trial brief and on appeal, is that Hughes failed to provide directional signs identifying the actual route or routes to the store. As noted above (see pt. C. of the Discussion, *ante*), Baskin's trial brief stated that "[a]t [the] Ralphs [store], like any other shopping center, pedestrians could choose to reach the entrance by walking between the cars parked in the parking lot. For example, a pedestrian could walk into the parking lot between the cars parked along [the public street] and weave their way to the entrance. . . . Wheelchair users do not have this option because . . . a wheelchair cannot fit between two parked cars." Baskin's trial brief further contended that due to the restricted options available to wheelchair users, the 2013 CBSC standards required directional signs informing them how to reach the store's entrance.

Viewed in the context of the FAC's allegations, Baskin's second theory is that Hughes failed to provide signs

finding favorable to judgment].) Here, our conclusion relies on no factual determinations subject to challenge or dispute.

37

identifying routes that made use of the vehicular lanes, such as the routes Hughes actually provided.  As noted above, the FAC alleges that "the *only way* for [Baskin] to get to the [store's] entrance" made use of "the vehicular drive aisle, among moving cars that [were] trying to get into and out of the busy parking lot," and led her "behind parked cars to the store entrance."  (Italics added.)  On appeal, Baskin acknowledges that the routes relevant to her second theory are those making use of the parking lot's "vehicular drive aisles," which Hughes offered as the accessible routes. Accordingly, under the second theory, Baskin's signage-based claim asserts that adequate signage was required of such routes, rather than of the missing path targeted by the first theory.

In our view, the trial court correctly determined that the FAC did not plead the second theory, as it failed to plead that the routes Hughes offered that made use of the vehicular drive lanes were in some manner unobvious or easily overlooked.  Because the State Architect falls within the Department of General Services, which is charged with the enforcement of the CBSC standards (*Campbell v. State Personnel Bd.* (1997) 57 Cal.App.4th 281, 284; Gov. Code, § 4453), we look to the State Architect's advisory note accompanying 2013 section 11B-216.6 for guidance regarding its application.  (See *Wilson, supra,* 163 Cal.App.4th at p. 1138; *Hankins, supra*, 63 Cal.App.4th at pp. 523-524.)  That note states that directional signs "are

38

not needed where paths are . . . *readily apparent.*" (Italics added.)

Nothing in the FAC reasonably suggests that the routes that Hughes offered, making use of vehicular access lanes, were not readily apparent. Indeed, the FAC alleges that Baskin recognized that the only paths available to her made use of those lanes; furthermore, the sole defects in those paths identified in the FAC were that they placed Baskin among moving cars and led her past parked cars. Although the FAC asserted the absence of "a designated, accessible path," that allegation referred to the target of the first theory, not the paths Baskin actually used to travel to the store. The FAC thus failed to plead a "fact . . . essential to the cause of action under the statute." (*Green, supra,* 39 Cal.App.2d at p. 56.)

Baskin contends that Hughes waived its objections to the signage-based claim by failing to demur to the FAC in a timely manner. We disagree. As Witkin explains, although certain objections to a complaint -- such as lack of certainty in the allegations -- are waived by failure to assert a timely demurrer, the principal defect ordinarily asserted by a general demurrer -- namely, failure to state facts sufficient to state a cause of action -- is not so waived, and may properly be raised prior to trial. (5 Witkin, Cal. Procedure, *supra,* Pleading, §§ 952, 958-959, pp. 367-368, 372-373.) That is the defect Hughes asserted in its motion in limine to exclude all evidence relating to inadequate signage, which

39

was "'in the nature of a general demurrer'" (*Clemens, supra,* 193 Cal.App.3d at p. 451).[17]

Had the FAC sufficiently pleaded a signage-based claim predicated on the second theory, we would conclude that it failed on the merits. The maps and overhead photos of the parking lot submitted at the hearing on liability show that the parking lot surrounding the store is not large, and that the rows of painted parking spaces define clear vehicular access lanes. For that reason, the routes to the store's entrances that Hughes offered are readily apparent to wheelchair users entering the lot from the streets. In sum, the trial court did not err in rejecting Baskin's DPA claim insofar as it was predicated on inadequate signage.

---

[17] Baskin suggests that Hughes's motion in limine was an improper procedural vehicle for attacking the signage-related claim. She relies on *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1587, in which the trial court granted a motion in limine to exclude all evidence regarding a claim on the ground that it was time-barred. Although the appellate court criticized the use of motions in limine to dispose of claims, it acknowledged that courts have the inherent power to use them in that manner, and affirmed the trial court's ruling. (*Id.* at pp. 1592-1597.) Nothing in that decision establishes that the ruling before us was incorrect or improper.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

### CERTIFIED FOR PUBLICATION


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

41